The NORTHERN ASSURANCE COMPANY, Plaintiff,

v.

Willard WARE, Jr., Individually and d/b/a Shiretown Chimney Service, and Jackes–Evans Manufacturing Co., Inc., and Copperfield Chimney Supply, Inc., and GSW Heating Products Co., Defendants.

Civ. No. 92–35–P–C.

United States District Court, D. Maine.

Jan. 6, 1993.

William Fisher, Portland, ME, for Ware.

Steven Smith, Philadelphia, PA, Gregory Powell, Portland, ME, for Northern Assur. Co.

Frederick Moore, Portland, ME, for GSW Heating and Jackes–Evans.

Daniel MaWhinney, Portland, ME, for Copperfield Chimney.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SANCTIONS

GENE CARTER, Chief Judge.

In this action Plaintiff, as subrogee of Wayne and Joyce Gile, alleges negligence, breach of contract, breach of warranty and strict liability and seeks compensation for damages caused by a fire in the Gile residence. Defendants GSW and Jackes–Evans Manufacturing Co., Inc. have moved to dismiss the action or for sanctions because of Plaintiff's decision to allow the house where the fire occurred to be destroyed before the initiation of this litigation.

The record shows that on December 15, 1990 a fire burned the home of Wayne and Joyce Gile. On December 17, 1990, Maine State Fire Marshal Joseph C. Menezes investigated and took photos of the fire scene.[1] He determined that the fire had originated "in the basement in the area of the sill on the back side of the structure, below the rear porch/sunroom." He further stated:

No mechanical ignition factor was found in the area of origin. The only possible ignition source which was found in the area of origin, was an electrical cable

---

1. Plaintiff asserts that Assistant Fire Chief Paul Morrison accompanied and assisted the Fire Marshal. The Court finds nothing in the record documenting this fact.

which ran from the main entrance panel to the garage. The cable was active, however, owner stated that no outlets in the garage were being used at the time of the fire.

Based on the examination, and other known facts, the possibility of a malfunction in the electrical cable, cannot be discounted. There were no factors which indicated the possibility of human element being involved. It appears that this fire was accidental, with a probable ignition factor being an electrical malfunction in the cable that serviced the garage.

Fire Investigation Report, Ex. B.

Shortly after the fire in December 1990, Plaintiff's expert fire investigator also investigated the fire scene. He reached conclusions different from those in Fire Marshal Menezes' report concerning the point of origin and cause of the blaze. Splaine found that the fire did not start in the basement but rather entered the basement through an orifice in the back of the house. Splaine Report, at 1. Splaine reported that he had communicated with state and town fire investigators and that they concurred with his findings. He also found that the fire was caused by a faulty stove pipe which ignited nearby combustibles and that he had eliminated all other possible causes. *Id.* at 2. Splaine removed the stove pipe and elbow. Splaine rejected Menezes's conclusion that the fire was electrical in origin because he found no beading or cavitation of the wires, which would have indicated that they were energized when exposed to the fire. If the fire had been caused by the electrical wires, Splaine would have expected to find more than the one tripped fuse which he found. Splaine retained the fuses. Although it was Splaine's practice to take notes as he performed an inspection, he destroyed those on which his report is based. He took some photos, but it is not

clear that they reflect the orifice described as the point of ingress of the fire. He prepared no sketches, diagrams or other materials in support of his report and there are no specific records of the measurements performed on charring at various sites, which is supposed to be one indicator of point of origin.

Colonial Adjustment, Inc. and Donald Jordan were hired to adjust the Giles' claim. Jordan's first report states that he advised the Giles not to touch the house until all necessary investigation is finished and that they agreed. The burned house had been removed by March 12, 1991. It was only on July 30, 1991, that Plaintiff first gave notice of the fire to any of the Defendants, who are the manufacturer, distributors, and installer of the metal chimney and components which were in use at the Giles' house. Defendants argue that Plaintiff has destroyed any physical evidence of whether the fire originated at the chimney or at an entirely different location. Since Defendants are unable to examine the physical evidence, they argue that the complaint should be dismissed. Alternatively, they argue that Splaine's expert testimony should be excluded or other sanctions imposed.

■ In *Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362 (D.Mass.1991), the court addressed a situation in which Defendant was being sued in a products liability action for failure of the seat belts and seat mechanism in a vehicle in which Plaintiff was injured. Defendant and its experts had no opportunity to examine the seat, its bolts and the seatbelts. Plaintiff's expert photographed the vehicle and dismantled it, and the vehicle was sold before Defendant could examine the vehicle. In determining to preclude the plaintiff from presenting any expert evidence concerning alleged defects in the vehicle, the court in *Headley* considered five factors [2]:

---

**2.** The sanction of dismissal, while always a possibility, has found little favor in cases like the one presented here. *See Headley,* 141 F.R.D. at 364, 365; *Barker v. Bledsoe,* 85 F.R.D. 545, 547–48 (W.D.Okla.1979); *Graves v. Daley,* 172 Ill. App.3d 35, 526 N.E.2d 679 (1988). This Court believes that the most severe sanction of dis-

missal should be reserved for cases where a party has maliciously destroyed relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence. That has not been shown to be the case here.

(1) whether the defendant was prejudiced as a result of [the destruction of the evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.

*Id.* at 365, *quoting Lewis v. Darce Towing Co., Inc.,* 94 F.R.D. 262, 266–67 (W.D.La. 1982). This Court finds the *Headley* court's approach useful in dealing with the problem presented here and will, therefore, consider the same five factors.[3]

 In this case, a plausible line of defense suggested by the State Fire Marshal's report is that an electrical problem rather than Defendants' metal chimney or installation of the chimney caused the fire for which Plaintiff seeks recovery. Plainly, Defendants are severely prejudiced in developing and presenting a causation defense by the destruction of the house and particularly by destruction of the wires in the house before Defendants were even notified of the fire. They were unable to have an expert evaluate the electrical system and examine the charring and rear orifice which Plaintiff's expert has used to buttress his opinion that the fire originated in the chimney.

The prejudice to constructing a defense here cannot really be cured. It is mitigated somewhat by the fact that the State Fire Marshal, an independent expert, examined the site and can be called to support his opinion that the fire was of electrical origin. Moreover, Defendants can have access to the fuses which were retained by Plaintiff's expert Splaine and which might be of assistance in assessing the electrical situation in the house. Obviously, the practical importance of the actual wires, charred timbers, measurements of charring, and photographs exactly detailing the site as it was immediately after the fire is hard to ascertain since they no longer exist. It is plain, however, that they were relevant and that Defendants cannot now duplicate them and explain them with the assistance of their own expert.

Although there is no evidence that Plaintiff here intentionally and maliciously allowed destruction of evidence of causation and origin of the fire, Plaintiff's actions can easily be termed reckless. This is not a case in which the conduct of a lay person, inexperienced in the conduct of litigation, has resulted in the destruction of evidence. This is a case brought by an insurance carrier pursuing its subrogation rights after having paid off its insured's claim. Insurance companies are no strangers to litigation, and it seems likely that Plaintiff had litigation in mind when, very soon after the fire, it had its own expert examine the site. The information provided by Plaintiff's expert made the commencement of litigation a distinct possibility, if not a likelihood. Although insurance companies, no doubt, may be under pressure speedily to conclude their dealings with their insureds, the need to do so does not relieve them from the necessity of acting responsibly with respect to the preservation of relevant evidence when they are in possession[4] of information that makes it likely that litigation will ensue.

Here, well before the structure, the loss of which was the subject of the claims to be put in litigation, was demolished, Plaintiff must have known of the conflicting theories of causation in respect to the fire which are set forth in Splaine's and the Fire Marshal's reports and should have known that the theory set forth in the Fire Marshal's report might well serve as the basis for a viable defense in the contemplated litigation. Knowing what it did, Plaintiff was palpably remiss in failing to make reasonable arrangements within the

---

**3.** Although the parties have not addressed the issue, the Court also agrees with the *Headley* court that its decision on this motion should be governed by federal rather than state law. *Headley,* at 364.

**4.** The record does not state specifically when Plaintiff obtained Splaine's report. His examination was performed shortly after the fire, however, and the results of that information were, therefore, available to Plaintiff well before the demolition of the burned house and almost seven months before Defendants were informed of the fire.

range of possibility to preserve the evidence at the scene that was relevant to determining the causation of the fire. It could have done so by either of at least two scenarios. It could have made the necessary arrangements to prevent destruction of the ruins until a period of time after commencement of suit to afford any diligent defendants an opportunity to apprise themselves of the conditions at the scene. To the extent that temporal considerations made that infeasible, Plaintiff could have caused the condition of the ruins to be preserved and memorialized by precise and detailed reports and photographs made by those knowledgeable in the field of fire causation analysis before ultimate destruction occurred. Here, for all that appears of record, the preservation of the evidence at the scene was selective, facilitating conclusions which support Plaintiff's theory of liability and impeding the examination of any other theory.

Such conduct raises questions of profound importance to the integrity of the legal process. The potential for abuse in situations like this one is great. A fair trial requires that both parties be heard and that both parties be permitted wherever possible to marshal and present evidence relevant to their positions in the litigation. We must accept, without recourse, that that ideal may be defeated by the accidental, random, or unintended dissipation of evidence by persons having no interest in its preservation, by those benignly unenlightened to its future importance, or by the operation of the law of entropy uninfluenced by human agency. Parties to litigation should not be held accountable for the effect of such phenomena upon litigation potential.

It is not too much to expect, however, that a party knowledgeable of litigation strategy, tactics, and policies who invokes the aid and jurisdiction of the Court and its processes not have acted *unfairly* to preclude the opportunity of an adversary to be apprised of the existence of a defense to a plaintiff's claims. If, in a single case, one party is permitted, without sanction, to selectively determine what relevant evidence is worthy of being preserved for use in a possible suit and to destroy, without notice to a potential adversary, other evidence, knowing of its potential adverse relevance to the issues to be generated by the assertion of claims, it will quickly become the routine practice that important evidence will be destroyed for the sake of convenience and self-interest. Thus, the truth-seeking process will be irreparably subverted, denying opposing parties a full and fair hearing.

In this case, the Court finds that the appropriate remedy for Plaintiff's decision to allow destruction of the burned dwelling without any reasonable effort to preserve relevant evidence therein, or to afford reasonable notice to likely adversaries that such was about to occur, is to prevent Plaintiff from presenting in its case-in-chief the testimony or conclusions of its expert, Richard Splaine, which are based substantially, if not entirely, upon the evidence which Plaintiff has permitted to be now destroyed. Defendants have been prevented in these circumstances from having their own expert investigate the cause and origin of the fire in any meaningful way. This sanction balances any unfairness to them in that regard.

If Defendants should decide to use the testimony of Fire Marshal Menezes or of the local firefighters concerning the condition of the wiring or the state of the charring at certain locations in the structure, Plaintiff will be permitted to offer the testimony of Mr. Splaine and other admissible evidence of his observations of the same conditions in explanation or rebuttal of such testimony.

Accordingly, it is ORDERED that Defendants' motion for sanctions be, and it is hereby, GRANTED and Plaintiff is hereby PRECLUDED from offering at trial the testimony or report of its expert, Richard Splaine, in its case-in-chief.