Susan TOWNSEND, Plaintiff,

v.

AMERICAN INSULATED PANEL COM-
PANY, INC., Bay State Electric
Company, Inc., Defendants.

Civil Action No. 94–11938–MLW.

United States District Court,
D. Massachusetts.

June 17, 1997.

Brian J. Kelly, Shuman & Ross, P.C.,
Sharon, MA, for Susan Townsend.

Francis J. Lynch, III, Lynch & Lynch,
South Easton, MA, for American Insulated
Panel Co., Inc.

Sally A. Vander Weele, Hutchins & Wheel-
er, Boston, MA, Linda Wilcox, Lee S. Mac-
Phee, Morrison, Mahoney & Miller, Boston,
MA, for Bay State Elec. Co., Inc.

## MEMORANDUM AND ORDER ON DE-FENDANT, AMERICAN INSULATED PANEL COMPANY'S MOTION FOR SUMMARY JUDGMENT, ETC. (# 57)

COLLINGS, United States Magistrate
Judge.

### I. Introduction

In this product liability action, plaintiff Su-
san Townsend alleges that on or about Octo-
ber 2, 1991, while she was working at Hilltop
Steakhouse Marketplace in Saugus, Massa-
chusetts, she received a severe electrical
shock from the metal door of a walk-in freez-
er. She asserts that the shock was so in-

tense that it threw her backwards, causing her to fall and injure herself. At the end of September, 1994, the original complaint in the instant case was filed naming as parties defendant American Insulated Panel Company, Inc. ("AIPC"), the designer, manufacturer and seller of the walk-in freezer, and Bay State Electric Company, Inc. ("Bay State"), a Massachusetts corporation whose employees installed, repaired and maintained the walk-in freezer. Approximately six months thereafter, the parties consented to have this case referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Although discovery has continued apace, albeit with some continuances sought by the parties, to date expert discovery has yet to be completed. Nevertheless, AIPC has filed a motion for summary judgment claiming entitlement to the entry of judgment as a matter of law in its favor; defendant Bay State's request to join in that dispositive motion has been allowed. As discussed at the May 21st hearing, however, the summary judgment motion shall be decided only to the extent that the defendants seek relief on the grounds of spoliation of evidence; otherwise, the motion is premature.

## II. The Facts

In large measure, the historical facts underlying the present litigation are uncontested. This recitation has been gleaned from the parties' respective statements of undisputed fact (## 58, 64) and the exhibits appended thereto.[1] Where facts are in controversy, it shall be duly noted.

On or about October 2, 1991, Susan Townsend was employed as the seafood manager at the Hilltop Steakhouse Marketplace ("Hilltop") in Saugus, Massachusetts. (# 58, Exh. A ¶ 6 & Exh. B ¶ 2A) While working that day, the plaintiff alleges that she received a severe electrical shock when she attempted to open the metal door to a walk-in freezer. (*Id.*) According to Ms. Townsend, the shock ultimately threw her backwards almost fifteen feet; she landed on her lower back. (# 58, Exh. A ¶ 7 & Exh. B ¶ 2A, 12A) As a consequence of the electrical shock and the blow to her lower back, the plaintiff contends that she sustained extensive permanent injuries. (# 58, Exh. A ¶ 13 & Exh. B ¶ 12)

Ms. Townsend notified her employer of the incident, and an accident report was filed with Hilltop's worker's compensation carrier/claims administrator, Cigna Insurance Company ("Cigna").[2] (# 58, Exh. C & Exh. D) Approximately a month and a half after the alleged October 1991 accident, Cigna sent an electrical engineer, one Richard Fain, to investigate the walk-in freezer at Hilltop. (# 64, Exh. G) Mr. Fain himself did not open the freezer door to examine the heater units. (*Id.*) Rather, in his report Mr. Fain wrote:

> Although not actually observed, it appears there are problems with the heater within the door assembly itself which require attention. This is not a simple matter, as the whole door must be opened to get at the heater units. This will probably have to be done by the manufacturer himself. In its present condition, the heaters are not safe to operate.

> \* \* \* \* \* \*

> In conclusion, the freezer, as examined, contains a defective heating device; the exact nature of this defect cannot be accurately until the door is removed and disassembled.

Statement of Material Facts # 64, Exh. G.

By certified letter dated July 31, 1992, the plaintiff's attorney notified AIPC that Ms. Townsend had been seriously injured as a consequence of an electric shock she had

---

1. During the oral argument, defense counsel indicated his desire to move to strike certain of the affidavits submitted by the plaintiff in opposition to the summary judgment motion. Although instructed by the Court to file and serve a motion to strike along with a supporting memorandum of law, no such papers have been filed. In these circumstances, the plaintiff's affidavits shall be considered to the extent that they comply with Rule 56(e), Fed.R.Civ.P.

2. In early March, 1993, a lump sum settlement agreement between Susan Townsend and Cigna with respect to the worker's compensation claim was approved by the Massachusetts Department of Industrial Accidents. (# 58, Exh. D)

sustained from a freezer unit and, moreover, that

Investigation by this office indicates that said freezer unit which injured Ms. Townsend was manufactured by your company. Further investigation by this office indicates that said freezer unit was defective and that your company is liable under both negligence and implied warranty of merchantability.

\*    \*    \*    \*    \*    \*

Please turn this letter over to your liability insurance company and ask them to contact me. If you are not insured for losses of this type, kindly have your legal representative call me at once.

Statement of Material Facts # 64, Exh. D.

There is no dispute that AIPC received the letter (# 58, Exh. J), but what happened thereafter is controverted. Daniel LaCroix on behalf of AIPC asserts that attempts were made by the company to examine and investigate the subject freezer but that they were thwarted by Hilltop personnel, specifically an individual named Wayne Kingston. (*Id.*) Mr. Kingston on the other hand testified at his deposition:

Q. If anyone from American Insulated Panel Company had ever come into the Hilltop Marketplace prior to its closing and asked to inspect the fish freezer, would you have barred them from doing that?

\*    \*    \*    \*    \*    \*

A. Not likely.

Statement of Material Facts # 64, Exh. A.

Even more to the point, in his affidavit Mr. Kingston, the vice president of Hilltop during the relevant period, states:

3. At no time during the operation or existence of the Hilltop Steakhouse Marketplace did I ever prevent, prohibit, or in any way interfere with any representative

from American Insulated Panel Co., Inc. or Bay State Electric conducting any type of inspection or investigation of any of the equipment which they supplied, installed, or worked on at the Hilltop Steakhouse Marketplace in Saugus.

\*    \*    \*    \*    \*    \*

5. I have no personal knowledge of ever having been contacted by Daniel LaCroix or by any representative of American Insulated Panel Company regarding any requests to inspect or investigate the walk-in fish freezer or any equipment at the Hilltop Steakhouse Marketplace in Saugus.

Statement of Material Facts # 64, Exh. B.

On September 28, 1993, Susan Townsend, Albert E. Townsend, III, and Albert E. Townsend, IV, ppa, by and through his father and next friend Albert E. Townsend, III, filed a lawsuit against AIPC and Bay State.[3] (# 58, Exh. K) That action was dismissed by the Court on April 22, 1994, for failure to effect service of process. (*Id.*) During the late summer or early fall of 1994, the walk-in freezer at the heart of this litigation was dismantled and either sold at auction, moved to another location or left behind when Hilltop vacated the premises. (# 58, Exh. E) On September 26, 1994, the complaint in the instant case was filed.[4] In mid-August, 1996, Ms. Townsend responded to a request for the production of the freezer that she was trying to determine its whereabouts. (# 58, Exh. L, Response No. 8)

This is sufficient to set the stage. As necessary, the facts will be supplemented within the legal discussion.

### III. Discussion

AIPC has moved for summary judgment on the grounds of spoliation of evidence. The defendant contends that the plaintiff has allowed the subject walk-in freezer to be

---

3. Although defendant AIPC states that the action was filed in January, 1991, (# 58 at 4) it is plain from the face of the dismissal (# 58, Exh. K) that the case was filed in 1993 given its docket number, 93–cv–12128 MLW, and a cursory review of the docket sheet reveals the first entry thereon to be the filing of the complaint on September 28, 1993.

4. In the plaintiff's view, the defendants would have the Court draw a sinister inference from the sequence of events. Ms. Townsend's attorney attempts to explain what happened via a footnote in a memorandum. *See* Plaintiff's Memorandum In Support # 62 at 5 n. 2. Unlike an affidavit of counsel, the text of a footnote is not evidence to be considered in ruling on a summary judgment motion.

either destroyed or lost, and, as a consequence, AIPC has been seriously prejudiced. As a sanction for her conduct, AIPC argues that Ms. Townsend should be prohibited from proffering the expert testimony of Richard Fain based upon his investigation and examination of the freezer on November 18, 1991. If this evidence is precluded, according to AIPC the plaintiff will be unable to prove the elements of her claims and, therefore, judgment as a matter of law should be entered in the defendant's favor.

█ At the outset it is noted that although AIPC has cited both state and federal law in support of its spoliation argument, it is federal law that controls on the issue. *Mayes v. Black & Decker,* 931 F.Supp. 80, 83 (D.N.H., 1996); *Northern Assurance Company v. Ware,* 145 F.R.D. 281, 283 n. 3 (D.Me., 1993); *Headley v. Chrysler Motor Corporation,* 141 F.R.D. 362, 364 (D.Mass., 1991). As used in the present context, spoliation is the intentional, negligent, or malicious destruction of relevant evidence. If it is determined that such evidence has been destroyed, the next step is to decide the appropriate sanction to be imposed upon the spoliator. *Corales v. Sea–Land Service, Inc.,* 172 F.R.D. 10, 12–13 (D.P.R., 1997). The potential sanctions include "dismissal of the case, the exclusion of evidence, or a jury instruction on the 'spoliation inference.'" *Corales,* 172 F.R.D. at 13–14 citing *Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa., 1996).

█ When considering the severity of the sanction warranted in the facts and circumstances of a particular case, courts have weighed the following, or similar, factors:

(1) whether the defendant was prejudiced as a result of [the destruction of the evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.

*Mayes,* 931 F.Supp. at 83 (quoting *Northern Assurance,* 145 F.R.D. at 283) (quoting *Headley,* 141 F.R.D. at 365) (quoting *Lewis v. Darce Towing Co.,* 94 F.R.D. 262, 266–67 (W.D.La., 1982)); *Corales,* 172 F.R.D. at 13–14.

"The primary aim of the sanction is remedial, although deterrence may play a role." *Corales,* 172 F.R.D. at 13–14 (citation omitted).

█ Having set forth the law with respect to spoliation of evidence, the Court finds that it is inapplicable to the case at hand for the simple reason that the plaintiff did not destroy or lose the walk-in freezer; Hilltop did. Perhaps recognizing this factual shortfall, AIPC advances a proposition that Hilltop, Cigna and Ms. Townsend were all agents of one another and, therefore, that the freezer was in the plaintiff's control and she was responsible for it being dismantled. Of course one would be hard-pressed to imagine a situation in which a plaintiff/employee, the employer, and the employer's worker's compensation carrier would not all be on the same side "working toward their mutual goal of getting a third-party recovery . . . whereby all will be beneficiaries of a settlement of judgment in the matter." (Memorandum Of Law In Support # 59 at 11) The fact that these three people/entities may share a common interest in the outcome of a case does not make them agents for each other, nor does it somehow put the freezer within the possession, custody or control of Ms. Townsend. In short, AIPC's argument is without merit.

Although there appears to be little law on this issue, to wit, the effect when relevant evidence is destroyed by a nonparty to the action, I am in agreement with the views expressed in the case of *Gordner v. Dynetics Corporation,* 862 F.Supp. 1303 (M.D.Pa., 1994) in which the Court wrote:

. . . [T]here does not appear to be a basis for concluding that such a sanction [preclusion from proving defect] would be appropriate when no conduct on the part of the plaintiff is the cause of the destruction of the allegedly defective product.

\* \* \* \* \* \*

In short, then, the cases in which judgment has been entered in favor of defendants because the plaintiffs have lost or destroyed key evidence are consistent with the doctrine of spoliation of evidence. The reason for the sanctions imposed in such

cases is to deter such conduct on the part of plaintiffs and to protect defendants from such conduct ... To hold that no plaintiff may recover in a product liability action when the actual product which is alleged to be defective is unavailable, regardless of the conduct of the plaintiff, is an unwarranted expansion of the doctrine of spoliation.

*Gordner*, 862 F.Supp. at 1307–08; *See also Toste v. Lewis Controls, Inc.*, 1996 WL 101189, *7–8 (N.D.Ca.) ("[The defendant] concedes that [the plaintiff] is blameless for the destruction of evidence but nonetheless argues that sanctions are appropriate against him ... Finally, [the defendant] cites no case in which a court actually imposed sanctions adverse to a blameless party.")

The *Toste* case is particularly noteworthy because the Court refused to impose sanctions against a plaintiff/employee for his employer's actions in destroying relevant evidence, the precise factual scenario at hand.

■ To summarize, absent any evidence that the plaintiff was at fault for the loss or destruction of the walk-in freezer, it would be inappropriate to apply the spoliation doctrine and impose sanctions against her in this case. While it is true that "[a] litigant has a duty to preserve evidence," *Corales*, 172 F.R.D. at 13–14 (citations omitted), the duty does not extend to evidence which is not in the litigant's possession or custody and over which the litigant has no control. If Hilltop had asked plaintiff or plaintiff's counsel whether the door could be sold or destroyed and either plaintiff or plaintiff's counsel responded affirmatively, a different question would be presented. It could be argued that in such a circumstance, the plaintiff had some degree of control. But absent some of control over the evidence which is in the possession of a nonparty, the plaintiff is not under a duty to act. In the specific context of this case, the plaintiff does not assume any duty

Hilltop had to preserve evidence because she was an employee of Hilltop and was injured in the course of her employment. *Toste*, 1996 WL 101189, *3.

Concededly, this result may put a putative defendant in a dilemma, since, until a litigant has been sued, the litigant cannot employ the provisions of Rule 45, Fed.R.Civ.P., to obtain an order compelling an inspection of property in the hands of a nonparty. However, even accepting the AIPC's evidence as true, it is readily apparent that AIPC did not try very hard to obtain an inspection after the initial rebuff. So far as appears, AIPC did not contact plaintiff's counsel to try to organize a joint effort to persuade Hilltop to allow the inspection. AIPC was advised that the injury occurred at the Hilltop market and that the injury was sustained by an employee. Yet, so far as appears, AIPC did nothing in order to learn the identity of the workers' compensation carrier so as to attempt to have the insurer intervene with its insured to permit an inspection.[5]

For all of the reasons stated, it is ORDERED that Defendant, American Insulated Panel Company's Motion For Summary Judgment (# 57), to the extent that it seeks the entry of judgment on the grounds of spoliation of evidence, be, and the same hereby is, DENIED. It is further ORDERED that the remainder of the motion be, and the same hereby is, DENIED without prejudice as premature.

---

**5.** In the *Toste* case, the Court noted that the workers' compensation carrier, Liberty Mutual, had filed a complaint-in-intervention in the litigation seeking recovery of sums paid to the plaintiff as benefits. While the Court never ruled whether the nonparty employer had a duty to preserve evidence, it did assert that "Liberty Mutual does not dispute that bringing a subrogation claim as [the employer's insurer] it assumes [the employer's] rights and duties." *Toste*, 1996 WL 101189, *3. While Cigna is not a party to the instant litigation, it most likely has a lien against any recovery which the plaintiff achieves. Because of this interest, Cigna may very well have had an interest in assisting AIPC in gaining access to the freezer door and preserving it.