Yamina SEDRATI, Plaintiff,

v.

## ALLSTATE LIFE INSURANCE COMPANY, Defendant.

### No. 1:95–CV–0131–1(WLS).

United States District Court,
M.D. Georgia,
Albany Division.

Aug. 4, 1998.

---

Jimmie H. Brown, Ralph O. Scoccimaro, Nancy Elizabeth Quynn, Albany, GA, for Yamina Sedrati.

William E. Cannon, Jr., Timothy Ott Davis, Albany, GA, for Allstate Life Insurance Co.

## ORDER

SANDS, District Judge.

Presently before the Court is Plaintiff's Motion for Sanctions for Destruction of Evidence. Plaintiff seeks to prevent Defendant from introducing evidence that suggests the presence of fingerprints of the insured decedent, Abdelhamid Sedrati, on documents apparently generated after his death. After close review of the evidence and arguments offered by both parties, the Court concludes that Plaintiff's motion should be granted.

### BACKGROUND AND PROCEDURAL HISTORY

The principal cause of action underlying this case is whether Defendant is liable to Plaintiff for the proceeds of a life insurance contract issued for her brother, Abdelhamid Sedrati ("Mr. Sedrati"). *Compl.* ¶¶ 4–8. Plaintiff further pled a second claim, namely, that Defendant had refused in bad faith to pay the proceeds of the insurance contract, in violation of O.C.G.A. § 33–4–6. *Id.* ¶ 9.

By Order initially entered December 21, 1995, and amended by Order entered January 10, 1996, the Court granted partial summary judgment in favor of Plaintiff on the first claim of Defendant's liability for the proceeds under the decedent's insurance contract, and denied summary judgment on Plaintiff's remaining bad faith claim. Thereaf-

ter, the Court set the case for trial on May 13, 1996.

In the course of defending against Plaintiff's pending bad faith claim, Defendant contends that it has obtained evidence that Mr. Sedrati is not, in fact, dead. Defendant asserts that it has examined thirteen (13) documents sent by the Plaintiff, Yamina Sedrati, ("the subject documents") to its claims agent, and on two of those documents, detected latent fingerprints of the decedent. *See, Def.'s Mot. Set Aside Partial Summ.J.*, Attachs. According to the Defendant, this so-called "fingerprint evidence" shows that the insured is not, in fact, dead.

On May 2, 1996, Plaintiff filed a Motion in Limine aimed to prevent the admission of the evidence arising from the fingerprint analysis conducted by Defendant's expert. One week prior to the scheduled trial, the Court continued the case in order that the parties could further conduct discovery. On June 11, 1996, the parties filed a consent order, which the Court entered that same date, directing the Defendant to deliver the thirteen documents, plus the copy of the known inked fingerprints of Mr. Sedrati, to Plaintiff's expert so that he could analyze them. The Court further ordered "that said documents shall not be damaged or destroyed in the process of testing by Plaintiff's expert and that, upon conclusion of said testing, said documents shall be filed with the Clerk of this Court." *Id.*

On July 19, 1996, in view of Defendant's evidence concerning the decedent's fingerprints on certain original documents, Plaintiff filed a Motion to Dismiss her bad faith claim, and thereby proposed to put an end to the litigation. Three days later, Defendant filed a Motion to Set Aside Partial Summary Judgment in favor of Plaintiff, based on the fingerprint evidence developed in the course of defending the bad faith claim. On August 1, 1996, Plaintiff filed a Motion for Leave to Amend [The] Complaint, to delete the pending bad faith claim, and thus "make this case ripe for final judgment." ¶ 3.

In order to clarify the evidence underlying Defendant's motion to set aside partial summary judgment, the Court issued an Order on November 6, 1996, directing the parties to attend an evidentiary hearing on the finger-

print evidence. The Court directed the parties to "be prepared to present both physical evidence and testimony regarding the fingerprint analyses done by each party's expert analyst." Order of Nov. 6, 1996, at 2. The Court specifically explained that "[a]t this juncture, the Court simply needs an evidentiary hearing about the results of the fingerprint analyses, as well as the potential admissibility of such evidence in light of any destructive procedures used during these analyses." *Id.* at 3. That evidentiary hearing was conducted on January 16, 1997.

On March 30, 1998, the Court issued an order denying both Plaintiff's motion to amend the complaint to dismiss the bad faith claim and Defendant's motion to set aside partial summary judgment, and accordingly set the case for trial on that claim alone. In that order, the Court preliminarily held that in view of subsequent developments (as outlined above) Plaintiff's motion in limine was stale, and dismissed it without prejudice. The Court set the case for the June 1998 Albany Trial Term.

After the pre-trial conference, Plaintiff filed the instant Motion for Sanctions for Destruction of Evidence. In their respective briefs on this motion, the parties have more fully addressed the chief issues surrounding the fingerprint evidence.

## DISCUSSION

Plaintiff argues that the fingerprint evidence should be excluded from trial on the remaining bad faith claim because Defendant mishandled and damaged the original documents which apparently bear the latent fingerprints, rendering Defendant's analysis unreliable and prejudicial to Plaintiff. Specifically, Plaintiff contends that

Defendant misrepresented to Plaintiff the date of actual testing; the Defendant failed to test the evidence in a manner that safeguarded its integrity; the Defendant failed to create a pictorial diary of sequential testing pursuant to FBI protocol; and the Defendant failed to advise the Plaintiff and this Court that the prints were destroyed but rather played a coy "cat and mouse"

game about the release of the evidence to the Plaintiff for subsequent testing.

*Pl.'s Mot. Sanctions,* at 2.

At the evidentiary hearing, January 16, 1997, Plaintiff presented testimony from her expert, Mr. Robert Lamar Windham ("Mr. Windham"), who Defendant stipulated was eminently qualified to testify about the procedures and results in the field of fingerprint analysis. *Hr'g. Tr.* at 10. (Defendant has offered evidence from an affidavit submitted by its expert, Dr. Jane M. Homeyer, Ph.D. *See, Def.'s Mot. Set Aside Partial Summ. J.,* Attach.) Mr. Windham explained that Defendant's expert analyzed the documents through two methods: first, a "chemical development" technique which uses an anhyrdron reactive solution to detect amino acids left by a person who touches the paper, and second, a "physical development" technique "used to enhance the previously developed anhydron prints." *Id.* at 18. According to Mr. Windham, the analysis conducted by Defendant's expert(s) was "incomplete" and departed from "FBI protocol" for fingerprint analysis insofar as the chemical and physical tests are potentially destructive to the original documents and should be performed in the middle of the development process. *Id.* at 19, 22. By starting in the middle of the process, as Defendant's expert evidently did, an analyst is precluded from conducting other tests because the original documents themselves are irreparably altered by the chemicals. *Id.* at 20. Mr. Windham further explained that it is "vitally important" to record a "pictorial history" of the sequence of chemical and physical tests in order to preserve a history of the latent impressions "because of the possibility of destroying the original [documents]." *Id.* at 21–23. Mr. Windham testified that the Defendant's expert did not include a pictorial history of the testing processes among the records of their testing methodology, *id.* at 20, and the Court notes that the Defendant has not presented any evidence which suggests that such a pictorial history exists. Mr. Windham also testified that the original documents could have been tested through a non-destructive, electrostatic process. *Id.* at 23.

Defendant argues that "[s]ince Plaintiff's counsel was notified of the date, place and time of the planned testing it is difficult to understand how he can argue that he did not receive proper notice." *Def.'s Resp. Mot. Sanctions,* at 6. Defendant has presented a letter, sent to Plaintiff's counsel via facsimile on April 22, 1996, which states, in relevant part, that "the fingerprint analysis which will be performed by Jane Homeyer, Ph.D. has been scheduled for 9:00 a.m. on Monday, April 29, 1996 at the Northern Illinois Police Crime Laboratory. . . ." *Def.'s Resp. Mot. Sanctions,* Ex. C. In fact, the fingerprint analysis was not performed on that scheduled date, but instead on May 6, 1996. Defendant does not offer any evidence which suggests that it seasonably notified Plaintiff's counsel of the *actual* date for analyzing the fingerprint evidence. Rather, Defendant argues that "since [Plaintiff's counsel] gave no notice to Defendant of intent to attend the testing nor of any desire to postpone the testing and did not show up on the scheduled date he should be estopped from complaining after the testing took place." *Def.'s Resp. Mot. Sanctions,* at 7. Defendant does not offer any legal authority for this conclusion, and the Court is unable to discern any. Defendant contends that the Plaintiff is actually at fault for failing to ensure that her expert attended the fingerprint analysis and questions how she has been prejudiced by "the testing procedures when she purposely chose not to take part in those procedures?" *Def.'s Resp. Mot. Sanctions,* at 9. "Most importantly," Defendant argues, "Plaintiff's expert agreed that the fingerprints which Dr. Homeyer stated in her report had been removed from post-mortem documents were the fingerprints of Abdelhamid Sedrati." *Id.*

It is important to recall, however, that at the evidentiary hearing conducted on January 16, 1997, Plaintiff's expert only agreed that the *photographed reproductions* of the latent fingerprints offered by the Defendant match the known fingerprints of Mr. Sedrati. *See Hr'g. Tr.* at 24, 26 (on cross-examination, Plaintiff's expert explained that he concurred with Defendant's expert that the photographed reproductions of the latent prints match the known fingerprints of Mr. Sedrati). Indeed, in light of the fact that the

Defendant's expert used destructive testing methods, Plaintiff's expert criticized the absence of a pictorial history of the testing procedures used by the Defendant's expert from which he could compare the original documents to the photographed reproductions.

■ Plaintiff argues that the Court should exclude the fingerprint evidence according to the principles set forth by Judge Carter in *Northern Assurance Co. v. Ware*, 145 F.R.D. 281 (D.Maine 1993), *citing Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362 (D.Mass. 1991). The Northern Assurance Company, as subrogee for the insured homeowners, sued to recover damages from the manufacturer of a stove pipe, alleging negligent design and manufacture of a stove pipe fixture that caused a fire that burned the insureds' residence. Judge Carter prevented the plaintiff from offering expert testimony drawn substantially upon evidence that the plaintiff had destroyed without undertaking either reasonable efforts to preserve it or reasonable efforts to notify likely adversaries, including the defendant. In reaching this conclusion, Judge Carter considered the balance of five factors:

> (1) whether the defendant was prejudiced as a result of [the destruction of the evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if the evidence is not excluded.

145 F.R.D. at 283. Chief among these factors is the potential prejudice to the adverse party. *See also, Allstate Ins. Co. v. Sunbeam Corp.*, 865 F.Supp. 1267, 1279 (N.D.Ill. 1994), *aff'd* 53 F.3d 804 (7th Cir.1995). Northern Assurance's expert did not prepare any detailed notes or sketches of the accident site in support of his report describing the likely cause of the fire, and after he prepared his report, he destroyed his notes. Judge Carter found that the defendant would be prejudiced by the introduction testimony by the insurance company's expert because, without access to the physical evidence or expert's notes, the defendant would be unable to "duplicate them and explain them with the assistance of their own expert." 145 F.R.D. at 283.

■ The Court finds the legal principles developed and applied in *Northern Assurance* illuminating to the evidentiary problem that has arisen in this case.[1] After the Defendant had completed its analysis of the thirteen (13) documents in its possession (in relation to a copy of the known inked fingerprints of Mr. Sedrati), the parties agreed that all of the documents should be delivered to Plaintiff's counsel so that Plaintiff's expert could examine them independently. As discussed above, the Court ordered "that said documents shall not be damaged or destroyed in the process of testing by Plaintiff's expert and that, upon conclusion of said testing, said documents shall be filed with the Clerk of this Court." Order of June 11,

---

1. Defendant argues that the cases cited by Plaintiff in support of her motion "lack value as precedent" in the Eleventh Circuit. *See, Def.'s Resp. Mot. Sanctions*, at 9–10. Apart from presenting its view concerning what cases serve as valid precedent, Defendant does not explain why the legal standard the court developed and applied in *Northern Assurance* is inapplicable to this case.

Instead, Defendant urges the Court to follow the authority of the decision by the Court of Appeals for the Eleventh Circuit in *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641 (11th Cir.1990). In *Hessen*, the court found Allstate, the subrogee-plaintiff, blameless in destroying the damaged vehicle and sustained the district court's decision to admit the Allstate's evidence because the defendant Jaguar was evidently unwilling to examine the damaged vehicle when it had the opportunity to do so. Defendant argues that the fingerprint evidence in this case should similarly be admitted because the Plaintiff had sufficient notice and opportunity to attend the testing and "deliberately chose not to attend the testing." *Def.'s Resp.Mot. Sanctions*, at 10.

As the Court has discussed above, the Defendant has not offered any evidence which suggests that it seasonably notified Plaintiff's counsel of the *actual* date on which its expert would analyze the original documents. The Court finds that Defendant's notice to Plaintiff to examine the evidence was substantially less sufficient, in kind and degree, than that afforded to the defendant Jaguar in *Hessen*. Furthermore, the Court does not find evidence sufficient to support Defendant's assertion that Plaintiff's counsel "deliberately chose not to attend the testing." *Def.'s Resp.Mot. Sanctions*, at 10. In *Hessen* by contrast, the evidence conclusively demonstrated that Jaguar rejected the opportunity to conduct a thorough examination of the vehicle. 915 F.2d at 651.

1996. By the terms of the Court's Order, these conditions applied to "Plaintiff's expert." Nonetheless, these conditions presuppose that the *Defendant's* expert had preserved the documents in the course of its testing procedures, since otherwise, Plaintiff's expert clearly would be deprived of the opportunity to analyze the documents from the same perspective available to Defendant's expert. Now that the Defendant's expert has conducted destructive tests on the original documents, the Court finds that the Plaintiff is exposed to considerable prejudice because, like the defendant in *Northern Assurance,* her expert cannot duplicate the conditions of the original documents and account for the existence—or absence—of Mr. Sedrati's fingerprints on them.

The Court further finds that the prejudice to Plaintiff cannot be cured. Because Defendant's expert failed to produce a pictorial history of the tests, Plaintiff's expert would be unable to form an opinion about the apparent existence of the latent fingerprints in relation to the original condition of documents (or their condition during the tests). *See, Hr'g. Tr.* at 20–21. Defendant has provided to Plaintiff's expert certain laboratory worksheets relating the testing procedures that were performed, yet those worksheets do not provide any basis upon which Plaintiff's expert may assess the methods and validity of those tests in relation to the condition(s) of the subject documents. Significantly, Defendant has not produced any evidence which enables another fingerprint expert to independently assess the procedures used by its expert (Dr. Jane M. Homeyer, Ph.D.), or verify her conclusions, apart from simply examining the photographed reproductions she contends were ultimately developed. Apart from its expert's testimony at trial relating the tests she has performed—that is, assuming Defendant tenders her testimony at trial—Defendant's proffered fingerprint evidence is virtually unassailable. The Court finds that the stark absence of any evidence which may enable Defendant to confirm the veracity of its expert's conclusions strikes at the heart of the reliability of its fingerprint evidence, and in this way, renders incurable the prejudice it poses to Plaintiff. The

Plaintiff can neither independently test nor confirm Defendant's expert's conclusions, and moreover, the Court cannot fairly weigh its admissibility.

The Court need not dwell on the third factor, namely, the practical importance of the destroyed evidence. Clearly, preservation of the documents in their original state is a crucial precondition for conducting accurate forensic tests on them. *See, Hr'g. Tr.* at 24, 28 (at the evidentiary hearing, Plaintiff's expert explained that the original images no longer exist on the documents and Defendant's experts "took no measures to prevent the fading of the fingerprints or the dissipation of the prints.")

The Court neither condones nor approves of Defendant's conduct in handling the subject documents or performing the analyses upon them without providing sufficient prior notice to the Plaintiff and the Court. Nevertheless, the Court does *not* share the view of Plaintiff's counsel, as expressed, for instance, by the gratuitous assertion that Defendant engaged in a "coy 'cat and mouse' game about the release of the evidence to the Plaintiff for subsequent testing." *Pl.'s Mot. Sanctions,* at 2. Plaintiff has not presented any evidence which suggests that Defendant engaged in any tactic which constitutes bad faith pertaining to the receipt, handling, or testing of the subject documents, and the Court is unable to discern any.

▮▮▮▮ Apart from finding that Defendant has not conducted discovery in bad faith, however, the Court "remains steadfast in its *concern about the possibility* that the judicial process may be abused in this case, as in all cases pending before the Court." Order of June 26, 1998, at 3. Our rules of evidence and procedure, as well as our system of justice generally, demand fairness to all concerned parties throughout the processes of discovery. The Court finds that Defendant's conduct with respect to handling and testing the subject documents falls far short of that standard of fairness. As Judge Carter pointedly argued in his decision in *Northern Assurance, supra:* "A fair trial requires that both parties be heard and that both parties be permitted *wherever* possible to marshal and present evidence relevant to their positions

in the litigation." 145 F.R.D. at 284 (emphasis added). Through its conduct, the Defendant has foreclosed any realistic opportunity for the Plaintiff to marshal and present evidence to rebut or offer an alternative account for the proffered fingerprint evidence. Permitting the Defendant to advocate its positions with respect to the bad faith claim—and potentially with respect to the underlying claim of breach of contract—with a decisive advantage forged through its own conduct subverts the rules and procedures integral to preserving the authority of this Court. To ensure that the standard of fairness required in the discovery process applies to all parties and is sustained in each case, the Court concludes that preventing the Defendant from introducing the proffered fingerprint evidence is an equitable sanction for its conduct.

## CONCLUSION

For the reasons set forth above, the Court **ORDERS AND ADJUDGES** that Plaintiff's Motion for Sanctions for Destruction of Evidence (Doc. No. 118) should be, and hereby is, **GRANTED.**

The Court further **ORDERS** that, at trial, all parties are prohibited from making any reference, either directly or indirectly (including through all exhibits, potential testimony, etc.), in connection with any fingerprint analyses performed upon or conclusions drawn from the subject original documents, or relating the existence, if any, of fingerprints of Mr. Sedrati on documents that may have been generated after his death.

**SO ORDERED.**