STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-73
MGK- AND-6/24/2013

SUSAN MORIN and
RICHARD MORIN,
    Plaintiffs

v.

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

HARLEY-DAVIDSON MOTOR
COMPANY GROUP, LLC and
AUGUSTA MOTOR SPORTS, INC.,
d/b/a NORTH COUNTRY HARLEY-
DAVIDSON
    Defendants

This matter arises out of a motorcycle accident that took place on May 28, 2007. Before the Court is Defendants' motion for summary judgment with respect to Plaintiffs' products liability complaint against them. Defendants contend that there is no genuine issue of material fact as to whether the alleged defect proximately caused the accident in question. Oral argument took place on June 5, 2013.

BACKGROUND

On May 14, 2007, Plaintiff Susan Morin purchased a 2007 Harley-Davidson XL 1200N "Nightster" motorcycle, manufactured by Defendant Harley-Davidson and sold by Defendant North Country. Ms. Morin had only ridden the Nightster on two prior occasions, and there are several facts in the record suggesting that Plaintiff was generally inexperienced with this type of bike.

On May 28, 2007, the Plaintiffs met with a group of friends to go for a motorcycle ride. About 45 minutes to an hour into the ride, Ms. Morin encountered a culvert at a curve in the road where she "dumped" her motorcycle. She was uninjured and the group continued on. Several of her companions testified at deposition that, during a break prior

1

to the accident, they observed burn or char marks on the bottom of Ms. Morin's jeans near where the exhaust pipe would be.

The Plaintiffs eventually split off from the rest of the group in order to ride home, and made their way to Young's Corner Road in Auburn. Ms. Morin ultimately crashed her motorcycle during or immediately after going around a very sharp right-hand turn in the road.[1] The curve is colloquially known as "Dead Man's Curve" to some locals and is considered a difficult curve to maneuver. Witnesses describe seeing Ms. Morin wobble and then veer to the left into oncoming traffic.

The last thing Ms. Morin remembers is going around the corner of Young's Corner Road, and then seeing a spot of burning embers about the size of her fist on her leg near the ankle. Defendants' stress that Ms. Morin remembers few details about how exactly she negotiated the turn and what happened after she observed the embers.

## STANDARD OF REVIEW

Summary judgment is appropriate when review of the parties' statements of material fact and the record evidence, considered in the light most favorable to the non-moving party, demonstrate that there is no dispute over any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733.

## DISCUSSION

The issue here is purely one of causation, and for purposes of this motion, the Court will assume that Ms. Morin did look down and observe embers on her pant leg.[2]

---

[1] The parties dispute whether the crash occurred while Ms. Morin was in the curve, or after she had cleared the curve and straightened her bike back up. Whether or not she was executing the turn at the time of the accident presumably bears on the likelihood that Ms. Morin's inexperience or other error was the cause of the accident. It is, however, an issue for trial.

[2] A separate issue, not considered here, is whether the Nightster actually displayed the defective condition in the moments before the accident. Assuming there was a defective condition, it would

2

Defendants contend that because Ms. Morin does not remember the details of the accident, she has failed to show how the alleged defect caused the accident.

Although factfinders may not engage in speculation, they may draw "reasonable inferences based on their own experience as to whether a particular act or omission is a proximate cause of an injury." *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223. "If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relationship exists." *Id.* (citation and quotation omitted).

"If an inference is rational and flows logically from the evidence, it may be considered by the fact-finder." *Addy v. Jenkins*, 2009 ME 46, ¶ 20, 969 A.2d 935 (Silver, J., dissenting) (citing *Estate of Hersum v. Kennebec Water Dist.*, 151 Me. 256, 263, 117 A.2d 334, 338 (1955)). However, if a countervailing inference is equally (or more) probable, then the evidence is speculative and may not be considered. *Id.* (citing *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778; *Estate of Hersum*, 151 Me. at 263, 117 A.2d at 338). In other words, an inference is reasonable and may be considered as long as other inferences are not equally or more probable. *See id.* ("The fact-finder may not select from among equally probable inferences.").

This case is distinguishable from the precedent cited by Defendants. *See Addy v. Jenkins*, 2009 ME 46, ¶ 11, 969 A.2d 935 (no evidence of causation when worker fell from scaffolding but could not recall whether it was connected in any way to the lack of a ladder, platform, or railing); *Durham v. HTH Corp.*, 2005 ME 53, ¶ 10, 870 A.2d 577 (no

---

have to manifest itself at that time in order to establish the element of causation. There is some debate over whether the factfinder can accept that Ms. Morin observed embers on her pant leg before crashing; she apparently had her mother throw out the jeans that displayed the burn marks on them. However, that issue will be considered at the motion in limine stage, and, otherwise, involves a credibility determination for the factfinder.

evidence of causation when a patron fell down stairs at a restaurant and there was some testimony after the fact that a metal strip at the top was dirty and full of gunk); *Houde v. Millett*, 2001 ME 183, ¶ 12, 787 A.2d 757 (no evidence that soot left by chimney cleaner caused plaintiff's fall when plaintiff later noticed soot on her pajamas several days later and she had not seen soot before or after the fall). In this case, Ms. Morin had a distinct awareness of a threatening circumstance just before she lost control of her bike. If the factfinder believes that Ms. Morin did look down and see embers on her pant leg, it would be reasonable to infer that she became distracted or fearful and lost control as a result.

Additionally, the Court finds that Defendants have not established that it is equally or more probable that Ms. Morin's inexperience or other error was the cause of the accident. There is certainly an issue of fact as to whether Ms. Morin was equipped to handle the Nightster and whether her inexperience contributed to the accident. However, it may be that Ms. Morin's inexperience *in combination with* being distracted by the embers caused the end result. It is well established that there may be more than one proximate cause to a particular injury. *Fournier v. Rochambeau Club*, 611 A.2d 578, 579 (Me. 1992). Observing the embers on her leg could have caused Ms. Morin to lose control in a situation where a more experienced driver would not. This would ultimately entail a comparative negligence determination. 14 M.R.S.A. § 156; *Austin v. Raybestos-Manhattan, Inc.*, 471 A.2d 280 (Me. 1984) (holding that Maine's comparative negligence statute is generally applicable to strict products liability actions). In any case, Defendants have not demonstrated that it is equally or more probable that Ms. Morin's inexperience was the only cause of the accident.

4

The entry is:

The Court DENIES the Defendants' motion for summary judgment.

_____6/24/13_____
DATE

_____
SUPERIOR COURT JUSTICE

5

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-73

SUSAN MORIN and
RICHARD MORIN,
    Plaintiffs

v.

HARLEY-DAVIDSON MOTOR
COMPANY GROUP, LLC and
AUGUSTA MOTOR SPORTS, INC.,
d/b/a NORTH COUNTRY HARLEY-
DAVIDSON
    Defendants

RECEIVED & FILED

AUG 0 6 2013

ANDROSCOGGIN
SUPERIOR COURT

ORDER ON DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF THE JEANS

This matter arises out of a motorcycle accident that took place on May 28, 2007. Before the

Court is Defendants' motion in limine to exclude evidence of the jeans Plaintiff Susan Morin was

wearing on the day of the accident, on the grounds that Ms. Morin directed the destruction of the

jeans before Defendants could inspect them.

BACKGROUND

On May 28, 2007, Plaintiffs Susan and Richard Morin met with a group of friends to go for

a motorcycle ride. Ms. Morin was riding her recently purchased 2007 Harley-Davidson XL 1200N

"Nightster" motorcycle, manufactured by Defendant Harley-Davidson and sold by Defendant North

Country.[1] That morning, the Morins rode from their house to meet the group at the home of Tom

and Louise Beule in Lewiston. Upon arrival, Mr. Morin, Mr. Beule, Ms. Beule, Paul Doyon, and

Diane Doyon all say that they observed burn marks and holes on the bottom of Ms. Morin's jeans

---

[1] Ms. Morin had only ridden the Nightster on two prior occasions, and there are several facts in the
record suggesting that Plaintiff was generally inexperienced with this type of bike.

1

near where the exhaust pipe would be. They have testified that someone used a shoestring or similar object to tie Ms. Morin's pant leg up and out of the way.

The group rode for most of the day and made several stops. The Plaintiffs split off to head home in the late afternoon, and made their way to Young's Corner Road in Auburn. Ms. Morin ultimately crashed her motorcycle during or immediately after going around a very sharp right-hand turn in the road. Witnesses describe seeing Ms. Morin wobble and then veer to the left into oncoming traffic.

Ms. Morin maintains that the last thing she remembers is going around the corner of Young's Corner Road, and then seeing a spot of burning embers about the size of a fist on her jeans near the ankle. The embers did not burn her skin directly, and she cannot say what made her look down at her leg.

Ms. Morin has stated that her first memory of looking down and seeing the embers was on June 10, her mother's birthday, at which point she had been out of the hospital for two or three days.[2] She has stated that she thought the embers must have been a "fluke thing" because at that point she did not know anything was wrong with her bike. Soon after having that memory, Ms. Morin says she told her mother, Jeanine Berube, Mr. Morin, and Ms. Beule about her memory of seeing the embers on her leg.

Ms. Berube has testified in deposition that hospital staff gave her a bag filled with Ms. Morin's clothing from the day of the accident, including the jeans. In late June or early July, she cleaned out her pantry and found the bag, so she called Ms. Morin and asked her what she should do with the contents. Ms. Morin asked her mother what condition the jeans were in, and Ms. Berube responded that they were cut up and covered in blood and other stains. Ms. Morin told her mother

_____

[2] There is some inconsistency in the record on this point. Elsewhere in her deposition, Ms. Morin states that she remembered seeing the embers three days after the accident. (S. Morin Dep. 96.) Ms. Morin's mother says that when she was still in the hospital Ms. Morin recounted feeling something hot on her leg just before she crashed. (Berube Dep. 32.)

2

to throw the jeans away, which she did, along with most of the other items in the bag. Ms. Morin has testified that it never crossed her mind that the jeans would be a piece of evidence and that she thought the appearance of embers was a fluke occurrence. Ms. Berube did not observe any burn or char marks, nor did she look for any, and her daughter did not ask her about any such marks.

On or about July 15, Plaintiffs received a recall notice in the mail regarding the exhaust shield of Ms. Morin's Nightster from Harley-Davidson. The recall stated: "These vehicles have a condition whereby the pant leg of some riders can have direct contact with the exhaust pipe. This condition could cause the pant leg to char or burn, which could lead to the possibility of injury to the rider." Mr. Morin initially threw away the recall notice, but he later obtained a new copy.

According to Ms. Morin, it was after seeing the recall notice that it first occurred to her that the Nightster was to blame for the accident. She talked it over with her husband, and then they contacted Attorney Welch. After receiving the recall notice, Ms. Morin called her mother to see if she still had the jeans, but Ms. Berube had already thrown them away and the trash was gone.

In an order dated June 24, 2013, this Court denied Defendants' motion for summary judgment. In doing so, it held that *if* Ms. Morin did observe embers on her pant leg, it would be possible for the factfinder to infer that she became distracted or fearful and lost control of the Nightster as a result. Whether other countervailing inferences are equally or more probable, including inferences about Ms. Morin's own level of fault, is a question of fact for trial.

Implicit in the summary judgment order is the fact that, in order to prove causation, Ms. Morin must ultimately prove that the alleged defect actually manifested itself by burning her jeans and caused her to crash her motorcycle. Even when a product is clearly defective, which may be the case here, there can be no liability when it does not actually reveal itself and cause the accident complained of.

3

In this motion, Defendants seek to keep out any testimony about the jeans, including Ms. Morin's recollection of seeing embers on her jeans, on the grounds that Defendants are unable to examine the jeans to determine whether or not the alleged burning actually took place. Without Ms. Morin's testimony about the jeans, it would be difficult, if not impossible, to prove that the defect actually caused the accident in question. While there is evidence that Ms. Morin's companions observed burn marks on her jeans earlier in the day, those observations are too far removed to show that the defect manifested again, hours later, just before the crash.

DISCUSSION

Defendants point to the doctrine of spoliation in support of its motion to exclude any testimony about the jeans. In the civil context, the Law Court has not addressed the issue of spoliation and the sanctions to be applied.[3] However, the First Circuit Court of Appeals and the Federal District Court for the District of Maine have set forth a test to determine when, and to what extent, sanctions should be imposed on parties who make evidence unavailable.

"The goals of the spoliation doctrine are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000) (citing First Circuit case law). Courts consider two issues, "prejudice to the non-offending party and the degree of fault of the offending party." *Id.* Of these, the First Circuit weighs prejudice more heavily due to the remedial aim of the doctrine. *Id.*

According to Defendants, they have suffered extreme prejudice because the jeans could either confirm or rebut the fact that Ms. Morin looked down and observed embers on her leg just before crashing. The Court agrees that Defendants have suffered some degree of prejudice due to

_____

[3] In the criminal context, the destruction of evidence violates a defendant's right to due process when the evidence has exculpatory value apparent before its destruction and the defendant is unable to obtain comparable evidence. *State v. St. Louis*, 2008 ME 101, ¶ 7, 951 A.2d 80.

4

the fact that they did not have the opportunity to examine the jeans. However, the extent of the prejudice is uncertain because it is unclear whether the jeans would resolve the issue as precisely as Defendants suggest. The jeans were cut from top to bottom and were covered in blood and stains. Whether any actual burn damage would be apparent is not clear. Relatedly, Ms. Morin and several of her companions maintain that they observed burns marks on her jeans on the morning of May 28, hours before the accident occurred. Thus, if the jeans were available and did display burn marks in the ankle area, it is unlikely that examination of the jeans would confirm or rebut whether the embers appeared again in the afternoon in the same area.

Furthermore, the Court is not convinced that Ms. Morin's level of fault justifies the sanction requested in this case. The Court finds that Ms. Morin's conduct was careless because an ordinarily reasonable person should have understood that she had possible grounds for a lawsuit and that the jeans would carry some evidentiary value. However, there is no evidence of bad faith or other mal intent to justify a more severe sanction. Ms. Morin was a "lay person, inexperienced in the conduct of litigation," and there is no evidence that she actually contemplated litigation at the time she told her mother to throw away the pants. *No. Assurance Co. v. Ware*, 145 F.R.D. 281, 283 (D. Me. 1993) (excluding expert evidence in a case where insurance carrier, "knowledgeable of litigation strategy, tactics and policies," failed to preserve the scene of a fire after its own expert examined it).

For these reasons, the Court denies the sanction asked for, specifically, exclusion of any testimony relating to the jeans. Excluding the evidence altogether would be an exceptionally severe sanction, tantamount to dismissal in this case, due to its critical importance in establishing whether the defect complained of actually caused the accident to occur. Such an outcome would unjustifiably work against the trial courts' preference for deciding cases on the merits. However, as the Court noted, Defendants did suffer some prejudice simply by the fact that they did not have the opportunity to examine the jeans, and Ms. Morin was careless in allowing her mother to throw the

5

jeans away. Thus, whether another remedy is necessary – specifically, a negative inference to be applied during the trial – remains for the Court to determine after hearing from Ms. Morin and her mother. Witness credibility is always a significant factor in any trial. In this case in particular, if the Court determines a negative inference is warranted, such a determination will adequately serve the remedial purposes of the spoliation doctrine.

The entry is:

The Court DENIES the Defendants' motion in limine to exclude evidence of the pants, and reserves judgment on whether it will apply a negative inference for the time of trial.

_____8/6/13_____
DATE

_____
SUPERIOR COURT JUSTICE

6

SUSAN MORIN - PLAINTIFF

Attorney for: SUSAN MORIN
MICHAEL WELCH - RETAINED
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065

RICHARD MORIN - PLAINTIFF

Attorney for: RICHARD MORIN
MICHAEL WELCH - RETAINED
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065

vs
HARLEY DAVIDSON MOTOR COMPANY GROUP - DEFENDANT

Attorney for: HARLEY DAVIDSON MOTOR COMPANY GROUP
JOSHUA RANDLETT - RETAINED 12/24/2012
RICHARDSON WHITMAN LARGE & BADGER
ONE MERCHANTS PLAZA, SUITE 603
PO BOX 2429
BANGOR ME 04402-2429

Attorney for: HARLEY DAVIDSON MOTOR COMPANY GROUP
FREDERICK J BADGER JR - RETAINED 06/07/2011
RICHARDSON WHITMAN LARGE & BADGER
ONE MERCHANTS PLAZA, SUITE 603
PO BOX 2429
BANGOR ME 04402-2429

Attorney for: HARLEY DAVIDSON MOTOR COMPANY GROUP
VISITING ATTORNEY - RETAINED 12/05/2011
VISITING ATTORNEY
-
- -

AUGUSTA MOTOR SPORTS INC - DEFENDANT

Attorney for: AUGUSTA MOTOR SPORTS INC
JOSHUA RANDLETT - RETAINED 12/24/2012
RICHARDSON WHITMAN LARGE & BADGER
ONE MERCHANTS PLAZA, SUITE 603
PO BOX 2429
BANGOR ME 04402-2429

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2011-00073

**DOCKET RECORD**

Attorney for: AUGUSTA MOTOR SPORTS INC
VISITING ATTORNEY   - RETAINED 12/05/2011
VISITING ATTORNEY

-

-   -


Attorney for: AUGUSTA MOTOR SPORTS INC
FREDERICK J BADGER JR - RETAINED 11/16/2011
RICHARDSON WHITMAN LARGE & BADGER
ONE MERCHANTS PLAZA, SUITE 603
PO BOX 2429
BANGOR ME 04402-2429


Filing Document: COMPLAINT                    Minor Case Type: PRODUCT LIABILITY
Filing Date: 05/13/2011

## Docket Events:

05/13/2011 FILING DOCUMENT - COMPLAINT FILED ON 05/13/2011

05/13/2011 Party(s):  SUSAN MORIN
           ATTORNEY - RETAINED ENTERED ON 05/13/2011
           Plaintiff's Attorney: MICHAEL WELCH

05/13/2011 Party(s):  RICHARD MORIN
           ATTORNEY - RETAINED ENTERED ON 05/13/2011
           Plaintiff's Attorney: MICHAEL WELCH

05/24/2011 Party(s):  AUGUSTA MOTOR SPORTS INC
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 05/24/2011
           AUGUSTA MOTOR SPORTS TO FILE ANSWER OR OTHERWISE RESPOND TO PLT'S COMPLAINT

05/24/2011 Party(s):  AUGUSTA MOTOR SPORTS INC
           ATTORNEY - RETAINED ENTERED ON 05/24/2011

05/25/2011 Party(s):  HARLEY DAVIDSON MOTOR COMPANY GROUP
           SUMMONS/SERVICE - PROOF OF SERVICE SERVED ON 05/20/2011
           THROUGH DAWN PEDERSON

05/25/2011 Party(s):  HARLEY DAVIDSON MOTOR COMPANY GROUP
           SUMMONS/SERVICE - PROOF OF SERVICE FILED ON 05/25/2011

05/25/2011 Party(s):  AUGUSTA MOTOR SPORTS INC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/17/2011
           THROUGH WILLIAM WELCH, ESQ.

05/25/2011 Party(s):  AUGUSTA MOTOR SPORTS INC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 05/25/2011

05/26/2011 Party(s):  AUGUSTA MOTOR SPORTS INC
           MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 05/26/2011
           MARYGAY  KENNEDY , JUDGE
           ALL RESPONSIVE PLEADINGS TO BE FILED BY JUNE 22, 2011.  COPIES TO COUNSEL ON 5-26-11