Mayes v. Black & Decker                    CV-94-376-SD  07/16/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


William M. Mayes;
Patricia M. Mayes


     v.                                    Civil No. 94-376-SD


Black & Decker (U.S.), Inc.



O R D E R


     In this diversity action, plaintiffs William and Patricia
Mayes[1] assert claims of negligence and strict liability against
defendant Black & Decker (U.S.), Inc., for alleged inadequacies
in the design and manufacture of an electric coffeemaker.[2]

     Presently before the court is defendant's motion to dismiss
due to alleged spoliation of evidence or, in the alternative, to

_____

     [1]The court notes that on December 28, 1994, William and
Patricia Mayes v. Black & Decker (U.S.), Inc., Civil No. 94-376-
SD, was consolidated with Allstate Insurance Company v. Black &
Decker (U.S.), Inc., Civil No. 94-534-SD.  For the sake of
clarity, and simply for the purposes of the instant order, the
court will refer to all plaintiffs as either "plaintiffs" or
"Mayes".

     [2]The coffeemaker at issue bears a label of General Electric,
whose Housewares Operation division was purchased by Black &
Decker in April of 1984.  See January 6, 1992, Letter from Gloria
Fusco to William Mayes (attached to Plaintiffs' Objection as
Exhibit B).

exclude expert testimony.  Plaintiffs object.[3]

## Background

On or about November 24, 1991, plaintiffs resided in a single-family dwelling in Windham, New Hampshire.  Sometime during the early morning hours of the 24th, a fire began inside the home and partially destroyed the premises.

After the conflagration was abated by the Windham Fire Department (WFD), an investigation was conducted by WFD's fire inspector, Ronald L. Hoegen, who determined that the epicenter of the fire was located in the home's kitchen area.  Specifically, Inspector Hoegen focused on the countertop area to the left of the kitchen sink.  Appliances and items located in this area included, inter alia, a scale, an under-cabinet toaster oven, an automatic coffeemaker, the dishwasher, and an electric light fixture.

Inspector Hoegen seized into evidence the scale, the toaster oven, the coffeemaker, and the electric outlet assembly to which

---

[3]Defendant additionally moves to file a reply memorandum. Such motion (document 23) is herewith granted, over plaintiffs' objection.  The memorandum is docketed as of the date of this order and has been considered by the court in making the rulings herein.

both appliances were connected.[4]  Although both the light fixture and the dishwasher were examined, Inspector Hoegen dismissed both items as the cause of the fire.

Numerous photographs and a videotape were taken of and at the scene.  Although a representative from Allstate was on-site the day after the fire, no independent investigation of the premises appears to have been conducted by the insurance company to determine the cause of the fire.  Rather, the evidence and photographs taken by Inspector Hoegen were forwarded to an expert retained by the insurance company for analysis.[5]  In both his initial report, dated the day of the fire, and his final report, dated August 7, 1992, Inspector Hoegen determined the cause of the fire to be the electrical failure of the defendant's coffeemaker.

On November 25, 1991, following Inspector Hoegen's initial investigation, custody over the premises was released to the plaintiffs.  Some ten days later, a cleaning company packed whatever of plaintiffs' property remained on the premises and

---

[4]Such assembly included the entire outlet as well as ten or twelve inches of the wall wiring and the cords for both the toaster and the coffeemaker.  Deposition of Ronald L. Hoegen at 136-37 (attached to Plaintiffs' Objection as Exhibit C).

[5]No report subsequent to such analysis appears in any of the parties' filings to the court, but from all that is before the court it appears that plaintiffs' expert's conclusion is consistent with that of Inspector Hoegen.

moved it to plaintiffs' temporary housing. Actual demolition and reconstruction of the premises did not begin until after the 25th of December, one full month following the event at issue.

Discussion

The court notes at the outset that "[d]ismissal with prejudice 'is a harsh sanction,'" Benjamin v. Aroostook Medical Ctr., Inc., 57 F.3d 101, 107 (1st Cir. 1995) (quoting Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971)), "which runs counter to [this Circuit's] 'strong policy favoring the disposition of cases on the merits,'" id. (quoting Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977)). Although the Circuit "'wholeheartedly endorse[s] the use of stiff sanctions, including dismissal [with prejudice], where appropriate,'" id. at 108 (quoting Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1079 (1st Cir. 1990)) (alteration in Benjamin), "such an option should be employed only when a plaintiff's misconduct is particularly egregious or extreme," id. at 107 (citing Estate of Solis-Rivera v. United States, 993 F.2d 1, 2 (1st Cir. 1993)) (other citation omitted); see also Northern Assurance Co. v. Ware, 145 F.R.D. 281, 282 n.2 (D. Me. 1993) (Gene Carter, C.J.) (noting "that the most severe sanction of dismissal should be reserved for cases where a party has maliciously destroyed

4

relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence").

In the view of the court, there has been no showing of willfulness or that the allegedly relevant evidence--namely, the dishwasher and oversink light fixture--was destroyed out of a specific malicious intent to put same beyond the reach and inquiry of defendants' experts. Accordingly, the court herewith denies defendant's motion insofar as it seeks the dismissal of plaintiffs' claims.

The more pertinent inquiry, therefore, is whether plaintiffs[6] should bear an evidentiary sanction for their conduct following the completion of Inspector Hoegen's investigation. See Northern Assurance Co., supra, 145 F.R.D. at 282; Headley v. Chrysler Motor Corp., 141 F.R.D. 362, 364 (D. Mass. 1991). Such inquiry is controlled by federal, rather than state, law. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991) (district court possessed of inherent power to sanction parties in appropriate cases); accord Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806 (7th Cir. 1995) ("the federal rules of procedure and evidence always apply in federal litigation, whether or not

---

[6]Both the Mayeses and Allstate face the imposition of sanctions under the circumstances stated herein. See Baliotis v. McNeil, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994) ("Since [the insurance company] authorized the destruction of indisputably relevant evidence, it and its insureds . . . are subject to sanctions.").

5

they determine the outcome" (citations omitted)); <u>Northern Assurance Co.</u>, <u>supra</u>, 145 F.R.D. at 283 n.3; <u>Headley</u>, <u>supra</u>, 141 F.R.D. at 364 ("To the extent that defendant seeks preclusion of evidence, the admissibility [or, conversely, inadmissibility] of evidence is governed by the Federal Rules of Evidence, even in diversity cases." (Footnote omitted; brackets in original.)).

A five-factor test has been developed as an aid in undertaking such inquiry:

> "'(1) whether the defendant was prejudiced as a result of [the destruction of the evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.'"

<u>Northern Assurance Co.</u>, <u>supra</u>, 145 F.R.D. at 283 (quoting <u>Headley</u>, <u>supra</u>, 141 F.R.D. at 365) (quoting <u>Lewis v. Darce Towing Co.</u>, 94 F.R.D. 262, 266-67 (W.D. La. 1982))). Although "prejudice *vel non* inuring to the adversary," <u>Headley</u>, <u>supra</u>, 141 F.R.D. at 365 (footnote omitted), is a threshold requirement, a showing of actual prejudice is not required in order to obtain the requested evidentiary sanction, <u>see</u> <u>id.</u> at 365 n.11.

What perhaps most distinguishes the instant case from the wealth of reported decisions weighing the spoliation issue--both within and without this circuit--is the fact that, unlike here, the piece of evidence destroyed in the other cases is <u>the</u> putative defective product or item. <u>See</u> <u>id.</u> at 365 (collecting

6

cases). Here, however, defendants' experts had access to and based their reports upon inspection of not only the accused coffeemaker, but also upon photographs and a videotape of the scene, the toaster, the electrical receptacle, the mechanical scale, x-rays of the coffeemaker, and plaintiffs' expert's report. See Affidavit of John J. Ferrara ¶¶ 3-4 (attached to Defendant's Motion as Exhibit I); Affidavit of Patrick J. McGinley ¶¶ 5-6 (attached to Defendant's Motion as Exhibit J).

Thus, defendant's chief complaint is not that it is unable to inspect the plaintiffs' principal piece of evidence, but rather that plaintiffs' destruction of the scene and other appliances has deprived it of the opportunity to posit other ignition sources. See Ferrara Affidavit ¶ 10 ("It is my opinion that the coffeemaker was not a cause of the fire. However, it is also my opinion that given the insufficient investigation by the local fire inspector, and the lack of preserved evidence, there is inadequate information from which to determine the precise cause of the fire. Although the coffeemaker may be eliminated as a cause, it is not possible to identify, with certainty, the actual cause of the fire given the inadequate documentation of the scene."); McGinley Affidavit ¶ 12 ("Based on the information available, it is my opinion that the fluorescent light fixture was the most probable cause of the fire. However, the lack of access to the light fixture, dishwasher, and/or photographs of

7

each prevents me from making a fully informed conclusion as to the cause of this fire.").

In the view of the court, although defendant has been prejudiced to a certain degree by the acts of plaintiffs in permitting the fire scene and certain appliances located therein to be destroyed without affording the defendant any opportunity to inspect same first-hand, Baliotis, supra note 6, 870 F. Supp. at 1291 ("a manufacturer of a product that is allegedly responsible for causing a fire is prejudiced if it cannot have its own cause and origin expert inspect a fire scene for other potential causes" (citation omitted)), such prejudice does not rise to the level which would warrant either dismissal of the case in its entirety or the preclusion of plaintiffs' expert from testifying as to the cause of the fire. But see Northern Assurance Co., supra, 145 F.R.D. at 284 ("If, in a single case, one party is permitted, without sanction, to selectively determine what relevant evidence is worthy of being preserved for use in a possible suit and to destroy, without notice to a potential adversary, other evidence, knowing of its potential adverse relevance to the issues to be generated by the assertion of claims, it will quickly become the routine practice that important evidence will be destroyed for the sake of convenience

8

and self-interest.")[7]

The court further finds and rules that the preservation of the coffeemaker and defendant's experts' opportunity to inspect same permits defendant to mount an able challenge to plaintiffs' main trial theory--that an electrical failure of the coffeemaker caused plaintiffs' damages. Dismissal or preclusion under these circumstances would thus constitute reversible error. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79-81 (3d Cir. 1994); cf. Northern Assurance Co., supra, 145 F.R.D. at 284 ("the appropriate remedy for Plaintiff's decision to allow destruction of the burned dwelling without any reasonable effort to preserve relevant evidence therein, or to afford reasonable notice to likely adversaries that such was about to occur, is to prevent Plaintiff from presenting in its case-in-chief the testimony or conclusions of its expert").

This court would be remiss, however, if it were to merely stand idly by and ignore--and effectively sanction--plaintiffs' actions altogether. Under the circumstances of this case, there remains the possibility that, upon establishment of an adequate foundation, "the trier of fact . . . may infer that the party who

_____

[7]Although Northern Assurance Co. discusses the spoliation issue, it is factually inapposite to the case at bar because in that case the premises were ordered destroyed after the insurance company's expert and the local fire marshal each identified different causes of the fire, but the insurance company retained only the evidence pertaining to its own source theory.

9

[destroyed an item arguably relevant to an issue in a case] did so out of a realization that the [evidence was] unfavorable." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1158 (1st Cir. 1996) (citations omitted). "Before such an inference may be drawn, there must be a sufficient foundational showing that the party who destroyed the [evidence] had notice both of the potential claim and of the [item's] potential relevance." Id. at 1159 (citing Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir. 1982)).

Moreover, "[a]n adverse inference about a party's consciousness of the weakness of his case . . . cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995) (citing Nation-Wide, supra, 692 F.2d at 217-18). "Even then, the adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the [evidence was] destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference." Blinzler, supra, 81 F.3d at 1159 (citing Jackson v. Harvard Univ., 900 F.2d 464, 469 (1st Cir.), cert. denied, 498 U.S. 848 (1990); Anderson v. Cryovac, Inc., 862 F.2d 910, 925-26 (1st Cir. 1988)).

10

Accordingly, defendant's alternative motion in limine to preclude expert testimony must be and herewith is denied. Whether the lesser sanction of a "spoliation inference" will be imposed awaits the development of further testimony during the course of the trial.

## Conclusion

For the reasons set forth herein, defendant's motion to dismiss or, in the alternative, motion in limine to preclude expert testimony (document 21) is denied. Trial remains scheduled for the two-week period commencing August 13, 1996.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 15, 1996

cc:  Robert A. Backus, Esq.
     John E. Friberg, Esq.
     James S. Harrington, Esq.

11