Arelis **VAZQUEZ–CORALES,**
et al., **Plaintiffs,**

v.

**SEA–LAND SERVICE, INC., Defendant.**

**Civil No. 95–2457 (PG).**

United States District Court,
D. Puerto Rico.

April 17, 1997.

Arnaldo E. Granados, San Juan, PR, for Plaintiffs.

Manolo T. Rodríguez-Bird, San Juan, PR, for Defendant.

## OPINION AND ORDER

PEREZ-GIMENEZ, District Judge.

Before the Court is Defendant Sea–Land Services, Inc.'s ("Sea–Land"), Motion to Dismiss Based on Spoliation of Evidence.

### I. Background

On November 14, 1995, Mr. Domingo Lugo Moreno was killed when the truck he was driving fell over the side of a curved ramp into a gorge some fifty feet deep below. The tractor truck (the "caculo" in Spanish) belonged to Mr. Lugo Moreno, while the trailer (consisting of the refrigerated container and chassis) he was hauling was the property of defendant Sea–Land.

Mr. Lugo Moreno's survivors—his wife, mother, four sons, and grandson—brought suit against Sea–Land, alleging that, due to Sea–Land's negligence, a pin that holds the chassis and container together on the right side was missing.[1] According to Plaintiffs, this caused the container and chassis to come apart as Mr. Lugo Moreno drove around the curve, pulling both trailer and truck over the side.

The truck was removed from the accident site to the Buchanan police station, where, the day after the accident, two Sea–Land employees inspected and took photographs of the tractor truck and trailer in order to document the loss to the company. The record is not entirely clear, but it appears that the tractor truck was removed from the station in mid-January, 1996, and sold thereafter.[2] On March 20, a status conference was held before the undersigned at which it was agreed that Plaintiffs would be permitted to inspect the trailer and Sea–Land would be permitted to inspect the truck. No mention was made that the truck had been sold. Over the next two months, counsel for the parties made arrangements for the inspection of the trailer, which finally took place on May 30. During this time, counsel for Sea–Land made multiple requests for an appointment to inspect the truck, but received no response until mid-May, when counsel for Plaintiffs suggested that the inspection take place in June. Again no mention was made of the truck's status. At the inspection of the trailer on May 30, Sea–Land's representatives were informed that the truck had been sold, but that the inspection could be arranged. In early June, the parties settled on June 25 for the inspection of the truck. Upon arriving at the appointed place on the 25th, counsel and the expert for Sea–Land discovered that the truck had been dismantled, making it impossible to carry out any useful inspection. The owner of the premises where the inspection was to have taken place, José Luis Adorno, said in his deposition that the truck had been dismantled approximately a month prior to the date of the inspection, that is, about late May.

### II. Discussion

Sea-Land argues that its inability to inspect the truck has prejudiced its ability to defend itself by eliminating its ability to show that the truck, which was owned and maintained by Mr. Lugo Moreno, was the sole or a contributing cause of the accident. Sea–Land further contends that dismissal is warranted because the evidence shows that Plaintiffs intentionally prevented Sea–Land from inspecting the truck. Plaintiffs offer several arguments in opposition.

### A. Duty to Preserve the Truck

#### 1. Relevance of the Truck

A litigant has a duty to preserve relevant evidence. *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994) (quoting *Fire Insurance Exchange v. Zenith Radio Corp.,* 103 Nev. 648, 747 P.2d 911, 914 (1987)); *Allstate Ins. Co. v. Creative Environment Corp.,* Civ. A. No. 92–0467T, 1994 WL 499760 at *5 (D.R.I. Apr. 1, 1994). Although Plaintiffs recognize the importance of preserving relevant evidence, (Pls.' Opp. Mot.

---

1. They also allege that the load was heavier than Sea–Land reported.

2. Plaintiffs claim it was sold in late January, but they have not yet produced a precise sale date.

Dismiss at 8), they argue somewhat insistently that because this is not a product liability case and they are not alleging any design or manufacturing defect in decedent's truck, an inspection of the truck is irrelevant to the case.

Plaintiffs offer no explanation for the notion that the truck would be relevant only if this were a product liability case. They invoke *Collazo–Santiago v. Toyota Motor Corp.*, 937 F.Supp. 134 (D.P.R.1996), arguing that in that case, the court "denied a motion to dismiss under the same circumstances." (Pls.' Opp. Mot. Dismiss at 5, 6–7.) In *Collazo–Santiago*, however, the court denied the motion precisely because it *was* a product liability case alleging a design defect in an airbag system. Since other cars of the same model would have the same design, the specific car involved in the accident was not necessary to either side's case. *See also Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 366 & n. 18 (D.Mass.1991) (stating that no prejudice would arise from destruction of car if plaintiffs were alleging design defect; however, destroyed car was necessary evidence to plaintiff's theory of manufacturing defect).

In a similar vein, Plaintiffs maintain that the operational condition of the truck was not crucial to framing their case. Their expert, they argue, only conducted an eye inspection of the truck and took photographs of it, as did Sea–Land's employees the day after the accident. The expert did not conduct a mechanical inspection, and he took no measurements of it and conducted no tests on it. Therefore, Plaintiffs say, they have no advantage over Sea–Land. Plaintiffs also add that Sea–Land has no evidence to prove that the truck caused the accident and has therefore never alleged that it did.

■ Both the product liability argument and this argument state, in other words, that evidence is relevant only when it is necessary to support the plaintiffs' theory of liability. Plaintiffs offer no authority for this position, and it is patently unsupportable. It is plain-

ly obvious that evidence with the potential to disprove a plaintiff's theory or to reveal a contributing cause of the damages for which the defendant is not responsible is relevant to the case. The truck at issue was intimately involved in the events and had the potential to provide such evidence.[3]

Nor does the fact that Sea–Land does not have evidence to prove that the truck caused the accident mean that the truck was irrelevant. Plaintiffs' actions prevented Sea–Land from acquiring any such evidence. Furthermore, Sea–Land alleged in its answer to the complaint that Mr. Lugo Moreno's own negligence caused the damages. This certainly includes his negligence in the maintenance and operation of the truck he owned and over which Sea–Land had no control. Sea–Land was not required to allege the specific conditions in the truck that may have caused the accident, at least certainly not before it was able to conduct discovery on the truck.[4]

Based on the foregoing, the Court finds that the tractor truck owned by Mr. Lugo Moreno was relevant and should have been preserved for Sea–Land's expert to inspect.

### 2. *Opportunity to Inspect*

Plaintiffs make certain statements to the effect that Sea–Land is responsible for its own failure to conduct an inspection of the truck. They point out that Sea–Land had the opportunity to inspect the truck while it was at the police station from mid-November to mid-January, and that two employees did in fact inspect the truck and take photographs the day after the accident. They also argue that Sea–Land never requested preservation of the truck.

■ Although it might be nice if all litigation moved as quickly as Plaintiffs seem to suggest it should, it is a lot to expect that Sea–Land should have hired its expert and had him conduct a full examination of the truck within little more than a month of being served with process (and during a holi-

---

3. Plaintiffs' argument, however, is not entirely devoid of merit with regard to the degree of prejudice Sea–Land has suffered. See discussion *infra*, p. 14.

4. This, too, however, has certain merit with regard to the issue of prejudice. See discussion *infra*, p. 14.

day season to boot).[3] The fact that two Sea–Land employees looked over and took pictures of the truck the day after the accident is irrelevant. It was part of their jobs to assess the loss to the company, they did their inspection for that purpose, Sea–Land had not been sued at that time, and these employees have not been announced as experts in accident reconstruction or any other field relevant to this case. Nor does the Court agree that Sea–Land was obliged to obtain an order for preservation of the truck prior to the March status conference at which it was agreed that Plaintiffs would provide access to the truck for inspection. There is a duty to preserve evidence independent of a court order. *Baliotis*, 870 F.Supp. at 1290 (quoting *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 628 A.2d 1108, 1122 (Law Div.1993)). Sea–Land had no reason to believe that a court order was necessary because of a risk that the evidence might be lost at that early point of the litigation. It should hardly take a court order to prevent a party from destroying evidence so intimately connected to the events and so obviously potentially relevant to another party's case.

Indeed, the evidence was not lost at that time. Even if it could be said that Sea–Land should have inspected the truck by mid-January or that it should have sought an order to preserve the truck, it is uncontested that the truck was still in one piece at the time of the status conference when the Court provided that Sea–Land would be given access to the truck to inspect it. It remained in one piece for two months thereafter, during which time Sea–Land made several unanswered requests for the appointment to inspect it. Counsel for Plaintiffs made no effort to preserve the truck after the status conference, when it was clear that there was need and an obligation to do so. They cannot pin the blame on Sea–Land for its inability to conduct an inspection of the truck while still in one piece.

## B. Sanctions

Having concluded that the truck was relevant and that Plaintiffs, not Sea–Land, are

responsible for Sea–Land's inability to inspect the truck prior to its destruction, the Court turns to the question of the appropriate sanction.

■ Sanctions for destruction of evidence may include dismissal of the case, the exclusion of evidence, or a jury instruction on the "spoliation inference." *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D.Pa.1996). Dismissal, the sanction requested by Sea–Land, is a harsh sanction that the courts are reluctant to impose. It is usually considered appropriate only when a party maliciously destroys relevant evidence for the sole purpose of preventing an adverse party from examining it. *Mayes v. Black & Decker (U.S.), Inc.*, 931 F.Supp. 80, 83 · (D.N.H.1996) (citing *Northern Assurance Co. v. Ware*, 145 F.R.D. 281, 282 n. 2 (D.Me.1993)).

Several district courts within the First Circuit have considered five factors in determining the proper sanction for destruction of evidence: 1) prejudice to the defendant, 2) whether the prejudice can be cured, 3) the practical importance of the evidence, 4) whether the plaintiff was in good faith or in bad faith, and 5) the potential for abuse. *Mayes*, 931 F.Supp. at 83; *Northern Assurance* 145 F.R.D. at 283; *Headley*, 141 F.R.D. at 365 (quoting *Lewis v. Darce Towing Co., Inc.*, 94 F.R.D. 262, 266–67 (W.D.La.1982)). The Court of Appeals, however, has not expressly adopted this guideline. Other circuits have set out similar factors to consider. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994) (considering (1) degree of fault of party who destroyed evidence, (2) degree of prejudice to opposing party, and (3) whether remedy short of complete exclusion will avoid substantial unfairness and deter culpable conduct); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir.1992) (considering (1) degree of actual prejudice, (2) amount of interference with judicial process, (3) culpability, (4) whether party was warned of possibility of dismissal for noncompliance with discovery, and (5) efficacy of lesser sanction than dismissal);

---

**5.** Sea-Land was served on December 7, 1995. The case was referred to its attorneys on December 18. The attorneys made their appearance on January 9. The answer to the original complaint was filed on February 13, and the first status conference was held on March 20.

*see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y.1991) (considering intent of spoliator and content of destroyed evidence). These are not intended to be rigid tests. *Ehrenhaus*, 965 F.2d at 921. The two factors that have generally carried the greatest weight are the degree of culpability and the degree of prejudice. *Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19, 25 (E.D.N.Y.1996); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D.Colo.1996). The primary aim of the sanction is remedial, although deterrence may play a role. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir.1997).

▆ Most significant in this case is the issue of prejudice. There is prejudice to Sea–Land from the destruction of the evidence in that this has prevented Sea–Land from developing other theories as to the cause of the accident. Sea–Land's defense, however, is not entirely frustrated by the destruction of the truck. In the Proposed Pretrial Order, Sea–Land states that indentures and damage on the trailer indicate that the pin was in fact in place at the time of the accident. Thus the condition of the trailer itself, to which Sea–Land has always had access, provides a basis for refuting Plaintiffs' main contention—that the pin was missing. Sea–Land is also able to offer at least one alternative theory as to the cause of the accident—that Mr. Lugo Moreno was speeding as he entered the ramp and consequently lost control of the truck and trailer. Sea–Land contends in the Proposed Pretrial Order that this is documented in the police report of the accident and in a diagram of the scene prepared by the investigating officer. In addition, Sea–Land has available the photographs and the eye inspection made by its employees, as well as the expert's inspection of the dismantled parts. At this point there is little, if anything, in the record to indicate that the truck might have produced evidence of such overriding significance that Sea–Land's ability to prepare for trial is so impaired as to warrant dispositive sanctions. *See Gates Rubber*, 167 F.R.D. at 104.

The instant case is thus most similar to *Mayes*. *Mayes* involved a fire in a home.

The plaintiffs claimed the fire was caused by a defective coffeemaker. The defendant manufacturer of the coffeemaker moved to dismiss or to exclude the plaintiffs' expert testimony as to the cause on the grounds that, although photographs and a video had been taken of the scene, the other appliances had been removed and the premises destroyed before the manufacturer had the opportunity to conduct its own investigation. The court wrote:

> What perhaps most distinguishes the instant case from the wealth of reported decisions weighing the spoliation issue . . . is the fact that, unlike here, the piece of evidence destroyed in the other cases is *the* putative defective product or item. . . . Thus, defendant's chief complaint is not that it is unable to inspect the plaintiffs' principal piece of evidence, but rather that plaintiffs' destruction of the scene and other appliances has deprived it of the opportunity to posit other ignition sources.

*Mayes*, 931 F.Supp. at 84. The court quoted from affidavits opining that the coffeemaker was not the cause of the fire, but that there was insufficient evidence from which to determine the actual cause.

This led the court to conclude that, while the defendant had been prejudiced to some degree by the destruction of the evidence, the prejudice did not rise to a level that would warrant dismissal of the case or exclusion of the plaintiffs' expert testimony as to the cause. The preservation of the coffeemaker and the defendant's experts' opportunity to inspect it allowed the defendant to present an able defense to the plaintiffs' main theory. *Id.; see also Howell*, 168 F.R.D. at 507–08 (rejecting request for dismissal or exclusion where accused microwave was preserved while rest of fire scene was destroyed). The same is true in the case at bar, and this Court now reaches the same conclusion. Dismissal or exclusion of Plaintiffs' expert testimony regarding the trailer as the cause of the accident—which would essentially amount to the same thing in this case—is not the appropriate sanction under the circumstances.[6]

6. The parties disagree on whether the truck and      trailer are considered a single unit under the

The Court does not find that bad faith on the part of Plaintiffs warrants imposing the sanction of dismissal or exclusion in the absence of sufficient prejudice. While the sequence of events raises suspicions, the evidence is not sufficient to demonstrate that Plaintiffs sold the truck solely for the purpose of obstructing access to it or that they ordered it dismantled.

Plaintiffs' conduct, however, constitutes at least reckless disregard for their duty to preserve evidence and cannot go unsanctioned. The potential for abuse would be high if "one party is permitted, without sanction, to selectively determine what relevant evidence is worthy of being preserved for use in a ... suit and to destroy, without notice ... other evidence, knowing of its potential adverse relevance." *Northern Assurance*, 145 F.R.D. at 284. In *Mayes*, the court allowed for the possibility of using the "spoliation inference," which would permit the jury to infer that the party that destroyed potentially relevant evidence did so " 'out of a realization that the [evidence was] unfavorable.' " *Id.* at 85 (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1158 (1st Cir.1996)). The inference may be drawn once a foundation is established showing that the party who destroyed the evidence had notice of the claim and of the potential relevance of the evidence. *Id.* (quoting *Blinzler*, 81 F.3d at 1159) (citing, in turn, *Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir.1982)). The court in *Howell* also chose to use a jury instruction on the spoliation inference, leaving open, in addition, the possibility of a greater sanction if the evidence produced at trial demonstrated more severe prejudice to the defendant than originally thought. *Howell*, 168 F.R.D. at 508 & n. 5. This Court will take the same course of action, granting Sea–Land a jury instruction on the spoliation inference, and, if the evidence demonstrates greater prejudice to Sea–Land than the record currently reveals or that Plaintiffs deliberately had the truck dismantled to prevent its inspection, a more severe sanction, including dismissal, may be imposed.

### III. Conclusion

For the foregoing reasons, Defendant Sea–Land's Motion to Dismiss Based on Spoliation of Evidence (Dkt.# 27) is hereby **DENIED**. Sea–Land will, however, be entitled to a jury instruction as to the spoliation inference. A greater sanction may be imposed on Plaintiffs at a future date if the evidence so warrants.

**IT IS SO ORDERED.**

---

Puerto Rico Vehicle and Traffic Law in this case. The Court finds it unnecessary to address that question but pauses to note that even if they are considered a single unit, it cannot be said that

Plaintiffs' principal piece of evidence was destroyed. At best it was partially destroyed, with the part on which Plaintiffs' base their case remaining intact.