Brassard, J.
The plaintiffs in this wrongful death action first seek the production of any electronic mail (e-mail) messages retained by Wyeth-Ayerst Laboratories (Wyeth) which are responsive to their Requests for Production of Documents. These requests have been opposed by Wyeth which maintains that it has already produced a vast number of documents, including electronic mail correspondence. Wyeth also contends that to require it to restore the back-up tapes containing electronic mail and other documents for the period from January of 1994, to May of 1995, would be unduly burdensome and costly, and that the plaintiffs should be compelled to absorb the cost of any such production which might be ordered by the court. In addition, the plaintiffs allege that Wyeth has engaged in willful misconduct and spoliation by failing to respond to the plaintiffs’ discovery requests and by failing to preserve documents which were, initially, protected by an order of this court and, later, subject to an understanding between the parties that they would not be destroyed.
Background
The complaint in this case was filed in early May of 1997. The plaintiffs allege that the defendants Wyeth, A.H. Robins Co., Inc. (both subsidiaries of American Home Products), and Fisons Corporation (Fisons), manufactured, distributed and sold weight-loss drugs known as Pondimin (fenfluramine) and lonamin (phentermine) which, when prescribed together, were commonly referred to as fen/phen. Plaintiffs further allege that Wyeth and Fisons did so with the awareness that there was a link between fen/phen and primary pulmonary hypertension (PPH) and that they failed to inform prescribing physicians and consumers of the risks involved. Plaintiffs are co-administrators of the estate of their daughter, Mary J. Linnen, who died from PPH, allegedly contracted as a result of her use of the fen/phen diet drug combination.
During the past decade, Wyeth has maintained a number of different software systems which provided intra-office communication capabilities. These systems were backed up every day onto tapes which would be utilized to recover lost data in the event that a catastrophic disaster caused the computer system to crash. The back-up tapes also recorded all other computer systems, thus they contain any word processing flies, spread sheets, models, as well as electronic mail communications which were saved on Wyeth’s computers. The back-up tapes were kept by Wyeth for a period of three months and then recycled. The recycling of the back-up tapes is, under normal circumstances, a widely accepted business practice *190 as, in the absence of a disaster which necessitates the use of the tapes, there is no need to keep them for an indefinite period of time.
In September of 1997, Wyeth suspended its usual recycling practices and began saving all back-up tapes which contained electronic mail. In December of 1998, Wyeth announced to the plaintiffs that a number of tapes from January 1994 to May 1995 had been found in storage where they had been placed during the pendency of some litigation not related to this action. It is the 1994-95 tapes which are the subject of the plaintiffs’ motion to compel Wyeth to respond to their discovery request. In addition, the plaintiffs seek sanctions against Wyeth and its counsel for the spoliation of back-up tapes which occurred from May 1997 to September 1997.
I. Plaintiffs’ Motion to Compel the Production of Certain Back-up Tapes.
The plaintiffs’ first request for production of documents, served on June 3, 1997, defined the term “document” broadly and included any type of information storage system.[3] Plaintiffs began the process of reviewing documents at Wyeth’s offices sometime in December of 1997 and continuing into the spring of 1998. During the course of discovery, plaintiffs became aware that many Wyeth employees had used an electronic mail system to transmit internal correspondence regarding issues pertinent to this case. According to the plaintiffs, only a small number of electronic mail messages were produced to the plaintiffs in hard copy form and plaintiffs were certain that this could not have been all documents responsive to the plaintiffs’ request for production of documents.
In a letter dated June 15, 1998, plaintiffs requested that Wyeth produce any e-mail either sent or received by fifteen named individuals which referenced the following topics: (1) Pondimin; (2) fen/phen; (3) PPH risks associated with the use of anorectic agents, including but not limited to Pondimin. The request specified that Wyeth provide any e-mail messages which were saved on computers or in hard copy form by the specified individuals as well as any deleted messages which could be retrieved from back-up systems. Plaintiffs’ Exhibit 7.
Wyeth responded on June 24, 1998, and informed the plaintiffs that “Wyeth has no ‘mass storage devices’ or other backup tapes containing electronic mail messages relating to Redux and Pondimin from January 1, 1994 through January 1, 1997.” Defendant’s Response, Tab 7, Exhibit B. As to the request for electronic mail which had been saved on the personal computers of key Wyeth employees, Wyeth indicated that it was in the process of determining whether there were documents in existence which were responsive to the request. Id. In a letter dated July 1, 1998, plaintiffs again inquired into the existence of back-up tapes containing electronic mail messages and asked that counsel for Wyeth confer with Wyeth to determine the truth of the previously made statement. Plaintiffs also indicated that since information regarding the brand and type of back-up systems utilized at Wyeth during the relevant time period had not been provided and confirmed that it might be necessary to depose any individuals knowledgeable about such issues in accordance with Mass.R.Civ.P. 30(b)(6). Plaintiffs’ Exhibit 8. Counsel for Wyeth confirmed that Wyeth did not have any back-up tapes containing e-mail messages responsive to plaintiffs’ request in a letter dated July 10, 1998, and further elaborated that “[t]he central storage system at Wyeth does not maintain electronic mail messages going back to that time period.” Plaintiffs’ Exhibit 9.
On July 17, 1998, Wyeth apparently produced a large number of electronic mail documents as a result of its search for e-mail which had been saved on the personal computers of the specified individuals. Plaintiffs believe that a number of these documents are highly relevant to their case. It is also the position of the plaintiffs that these documents should have been produced much earlier in response to their original request for production of documents.
On July 21, 1998, plaintiffs requested that Wyeth provide them with information regarding the electronic mail systems in use during the time period at issue. Plaintiffs’ Exhibit 13. In a September 2, 1998 letter, Wyeth replied that such information had been provided to plaintiffs in response to plaintiffs’ third set of interrogatories. However, plaintiffs point out that the answer to interrogatories identified the two systems in use as Novell Group Wise and VAX All-In-One Mail while the September 2, 1998 letter stated that the two systems in use were Novell GroupWise and Word Perfect “Office.”
Plaintiffs advised Wyeth, in a letter dated October 20, 1998, that they intended to conduct the previously noticed Mass.R.Civ.P. 30(b)(6) deposition with regard to Wyeth’s utilization of electronic mail software in the conduct of its business.[4] Plaintiffs Exhibit 16. This deposition took place on December 8, 1998.
Wyeth designated Daniel Cote, the Associate Director of Business Unit Support at American Home Products, as the individual to provide information regarding the electronic mail systems and software used at Wyeth with regard to the issues and during the time frame identified by the plaintiffs in the 30(b)(6) notice. The plaintiffs assert that during the course of the deposition it became clear that Mr. Cote was not particularly familiar with the back-up procedures or record retention practices of the electronic mail systems. Indeed, when asked if there were Wyeth personnel who might have more information on these issues, Mr. Cote identified an individual named “Maria” who was responsible for the operation of the mail system for the Medical Affairs Department.[5]
The plaintiffs, through the course of the deposition of another individual, identified the “Maria” referred to *191 by Daniel Cote as Maria Woodruff. Ms. Woodruffs precise position within the Wyeth organization is not specified in the papers supplied to the court in conjunction with this motion. However, it is apparent from the excerpts of her deposition testimony which have been supplied by the plaintiffs that she was not knowledgeable about the record retention practices of the Medical Affairs Department, that she was not familiar with the back-up procedures associated with the electronic mail systems, and that she had no knowledge of the record retention protocols with respect to the e-mail systems used during the time frame in question. Plaintiffs’ Exhibit 19.
Just prior to the deposition of Daniel Cote, counsel for Wyeth notified plaintiffs’ counsel that Wyeth might have a few back-up tapes which could possibly contain electronic mail messages responsive to the plaintiffs’ request for documents. At the end of the Cote deposition, counsel for Wyeth went on the record and stated the following:
I don’t want to imply that I know that tapes exist relating to the time period and the groups that you’ve been asking about because that’s not the case. What I indicated is that we have some recent information that such tapes may have been taken out of the recycling process some years ago in connection with another litigation not related to fenfluramine or dexfenfluramine and that those tapes may have been sent off-site and may still exist. I’m saying “may” because I don’t know that actually happened or that they exist.
Plaintiffs’ Exhibit 17 at 160-61.
By letter dated February 24, 1999, Wyeth provided the plaintiffs with further information about the backup tapes, numbering over one thousand, located by Wyeth. Defendant’s Tab 7, Exhibit D. The letter revealed five categories of back-up tapes, all made between January of 1994 and May of 1995, which may hold responsive e-mail messages: (1) VAX All-In-One, 149 tapes; (2) Novell Radnor, 674 tapes; (3) OfficeV-ision, 350 tapes; (4) 555 Building, 9 tapes; (5) 170 Building, 17 tapes. In addition, Wyeth stated that there were “thousands” of back-up tapes which had not been recycled since September of 1997 when Wyeth began retaining all back-up tapes “out of an abundance of caution in connection with this litigation.” Id.
Wyeth restored two of the back-up tapes from the Novell Radnor category and, as a result, produced several e-mail messages which contained the search terms specified in plaintiffs’ document request. Following these disclosures, the parties engaged in correspondence aimed at evaluating which categories of tapes were likely to contain relevant information and how the discovery requests could be focused in order to reduce the time and expense involved. Plaintiffs’ Exhibits 23 and 24.
The plaintiffs report that the request to restore back-up tapes has been narrowed to some extent: of the 674 Novell Radnor tapes, 77 were created prior to the time period requested by the plaintiffs, 1994 through 1996, leaving 597 which may contain relevant documents. All of the OfficeVision tapes were created prior to the time period identified by the plaintiffs, therefore none of those 350 tapes is a part of the plaintiffs’ motion for production. Plaintiffs have identified 5 of the 555 Building tapes which may contain information responsive to their request. The parties agree that the 170 Building tapes are likely to contain information subject to the attorney-client privilege; therefore, plaintiffs do not seek information from those tapes. Lastly, the plaintiffs agree that production of the post-September 1997 tapes would result in little additional information responsive to their e-mail production request. Accordingly, those tapes are not the subject of this motion for production.
The cost to restore the VAX All-In-One Mail tapes has been estimated by the parties to be somewhere between $300,000 and $350,000. The estimated cost for the restoration of the Novell Radnor tapes has been placed at somewhere between $850,000 and $1.4 million.
The issues raised in this motion have also been raised in the Federal Court Multi-District Litigation (MDL 1203) which is a consolidated action brought by thousands of other plaintiffs who allege that they suffered injury as a result of certain diet-related pharmaceutical products manufactured, prescribed, and distributed by the defendants named in the action, including Fisons and American Home Products. This consolidated action is being litigated in the United States District Court for the Eastern District of Pennsylvania before the Honorable Louis C. Bechtle, Ch. J. Emeritus. The Federal Court action, under the caption In re: Diet Drugs (Phentermine/Fenfluramine/Dextenfluramine) Products Liability Litigation, is being conducted primarily by a Plaintiffs’ Management Committee (PMC) and by counsel for the individual defendant pharmaceutical companies.
Plaintiffs’ counsel in this case, the Linnen Massachusetts litigation, has participated on the Plaintiffs’ Management Committee and has, according to Wyeth, spearheaded the PMC’s efforts in MDL 1203 to obtain discovery as to the back-up tapes. An agreement has been reached between Wyeth and the PMC with regard to this discovery issue. In that agreement, entered into on April 21, 1999, Wyeth has agreed to, inter alia, restore a sampling of the tapes from each of the categories of tapes which have been identified as possibly containing relevant material. The parties have also agreed that Wyeth shall bear the initial costs for restoring the sample of tapes but that Wyeth shall have the right to seek reimbursement of up to $25,000 from the PMC. The parties agreed that any further production of electronic mail back-up tapes will be *192 allowed only upon “good cause shown by the PMC.” The issue of the cost incurred for any further restoration will be addressed at that time and is separate from the initial $25,000 cap. Defendants’ Tab 5.
The scope of plaintiffs’ request in the motion presently before this court is simultaneously narrower and broader than that in MDL 1203. It is narrower in the sense that the plaintiffs in this action have limited their request to a shorter time frame; they have requested the electronic mail of a smaller number of individuals; and the focus is on primary pulmonary hypertension (PPH). In MDL 1203 electronic mail messages of 31 individuals, as opposed to 15, are requested and the subject matter includes issues involving valvulopathy and neurotoxicity in addition to the PPH. On the other hand, the plaintiffs in this action have requested an order to compel the production of documents which is broader than that in MDL 1203 because they seek restoration of all of the backup tapes previously identified above, rather than a sampling of them.
In addition to the restoration of the tapes, plaintiffs have requested that the court impose sanctions against Wyeth and its counsel for the failure to promptly identify and disclose information regarding the electronic mail systems used by Wyeth as well as the existence of the back-up tapes. It is the plaintiffs’ position that the conduct of Wyeth and Wyeth’s counsel with regard to issues involving the electronic mail systems and the back-up tapes has resulted in misrepresentations, delay, and, ultimately, prejudice to the plaintiffs. Accordingly, plaintiffs have requested the imposition of the following sanctions. First, plaintiffs ask that the court enter an order that all electronic mail sought to be introduced as evidence at trial should be deemed admissible under the business records exception to the hearsay rule. Second, plaintiffs assert that the court should enter an order mandating that in the event that the subsequent document production resulting from this motion leads the plaintiffs to conclude that further depositions are necessary, any such depositions shall take place in Boston and Wyeth will bear any costs and fees incurred as a result. Third, it is the position of the plaintiffs that repeated misleading statements by Wyeth’s counsel on issues described herein merit an order by the court revoking the permission granted to Arnold Porter to practice pro hac vice in this jurisdiction. Finally, plaintiffs request an order awarding them all attorneys fees and costs, including the cost of hiring consultants associated with pursuing this electronic mail discovery issue. Plaintiffs state that these costs should include the Rule 30(b)(6) deposition of Daniel Cote, the deposition of Maria Woodruff, and the drafting of all correspondence and pleadings associated with this issue.
Turning first to the merits of the motion to compel production of the back-up tapes, the court agrees with the plaintiffs that these tapes have the potential for containing relevant material and that plaintiffs should have the opportunity to examine at least a portion of the tapes to determine if that is the case. A discovery request aimed at the production of records retained in some electronic form is no different, in principle, from a request for documents contained in an office file cabinet. While the reality of the situation may require a different approach and more sophisticated equipment than a photocopier, there is nothing about the technological aspects involved which renders documents stored in an electronic media “undiscoverable.” See Mass.R.Civ.P. 26.
The defendants assert that Wyeth has already produced many documents in response to plaintiffs’ request for the production of documents, including a significant amount of e-mail correspondence, and that any order requiring defendants to restore and search the back-up tapes would prove unduly burdensome on Wyeth. In fact, defendants characterize this motion as a “multi-million dollar fishing expedition.”[6] Defendants’ Response at 18.
While the court certainly recognizes the significant cost associated with restoring and producing responsive communications from these tapes, it agrees with the District Court for the Northern District of Illinois in In re: Brand Name Prescription Drugs Antitrust Litigation that this is one of the risks taken on by companies which have made the decision to avail themselves of the computer technology now available to the business world. 1995 WL 360526 (N.D. Ill.). To permit a corporation such as Wyeth to reap the business benefits of such technology and simultaneously use that technology as a shield in litigation would lead to incongruous and unfair results.
That said, the court, of course, is not adverse to compelling production in a manner designed to minimize, to the extent that is possible, the ultimate cost incurred by Wyeth. An agreement has been worked out in MDL 1203, as noted above, which calls upon the defendant to restore a specified sample of back-up tapes and to produce any responsive documents or communications contained therein. Once it has been determined whether there is responsive and relevant information contained on the sample tapes, the parties to the Federal Court litigation have agreed to revisit the issue and discuss any further restoration of the back-up tapes. While this court is, of course, not bound by the actions and decisions of the court in MDL 1203, it appears that the sensible course of action in this case would be to await the outcome of the discovery process now under way in MDL 1203 and to reserve any decision to require additional tapes to be restored until the potential for relevant and responsive documents has been more fully explored through review of the restored sample tapes.
Accordingly, plaintiffs’ motion to compel the production of documents is allowed to the extent that all *193 of the documents produced In accordance with the agreement entered into in MDL 1203 will be made available to the plaintiffs in this action. The issue of further tape restoration and document production with regard to electronic mail may be reopened and reconsidered at the appropriate time.
Turning to the issue of the imposition of sanctions for Wyeth’s delay in disclosing the existence of the back-up tapes, the court will address each request.
First, plaintiffs request a blanket “evidentiary order” that any and all electronic mail sent among Wyeth employees shall be deemed admissible under the business records exception to the hearsay rule. Even assuming that the court has the authority to enter such an order, and the plaintiffs provide no support for their statement that there is such authority, such a ruling is more appropriately reserved for trial, The court is not prepared to enter an order which, conceivably, could result in the admission of evidence which does not meet the threshold requirements of relevance or which raises issues of second-level hearsay. Accordingly, the plaintiffs’ request for sanctions in the form of a general evidentiary ruling is denied.
The plaintiffs’ second request centers on the potential for further depositions being conducted if materials produced from the back-up tapes prove fruitful. While the court will reserve ruling on this issue until the parties evaluate any responsive documents, it certainly would be fair to require Wyeth to bear the costs associated with the retaking of any depositions previously conducted by the plaintiffs as well as any appropriate new depositions. Where the necessity of engaging in further depositions stems from the defendant’s delay in producing documents requested, at a minimum, over a year ago, then the defendant must shoulder the costs attendant upon such a delay. The court will reserve a definitive ruling on this request until such time as it becomes apparent that additional deposition testimony will be required.
Third, plaintiffs have requested that the permission granted to Arnold & Porter, Wyeth’s counsel, to practice pro hac vice in this jurisdiction be revoked. Plaintiffs rely upon the representations of defendants’ counsel with regard to the existence of back-up systems and electronic media retention for electronic mail documents as well as the failure of counsel to produce a sufficiently knowledgeable witness at the Rule 30(b)(6) deposition as grounds for this sanction. Although there has been a significant delay in this litigation with regard to the production of electronic mail documents, it is impossible from the record before the court to determine if this delay is solely the fault of Wyeth or if its counsel also acted inappropriately. In the absence of a clear connection between the conduct complained of by the plaintiffs and any action, or inaction, on the part of Arnold & Porter, the court will not order the revocation of counsel’s permission to practice pro hac vice and deprive Wyeth of the counsel of its choice. For these reasons, plaintiffs’ request for such a sanction is denied.
Finally, plaintiffs have requested that Wyeth be ordered to bear all fees and costs associated with the electronic mail discovery issue. In light of the uncooperative, be it unintended or willful, conduct by Wyeth in relation to the electronic mail discoveiy issue, the court rules that the imposition of such a sanction is appropriate. Plaintiffs’ initial request for production of documents asked for any documents stored in the form of electronic, magnetic, or computer process in June of 1997. That request was reiterated more specifically in June of 1998. Plaintiffs doggedly pursued the issue despite letters from defendants’ counsel in June and July of 1998 denying the existence of any such stored documents. Finally, in December of 1998, counsel for Wyeth announced that there “may” be some tapes in storage with documents from the relevant time period. It was several more months before the tapes were identified with respect to what systems had been used and the time frame they covered. By this time, plaintiffs had already conducted a large number of depositions which, conceivably, may have to be repeated. Moreover, plaintiffs’ counsel has devoted a great deal of time and energy to the issue of electronic mail production which would have been unnecessary if the tapes had been produced in a timely fashion. Accordingly, the court orders Wyeth to bear the costs and fees associated with this discovery issue, including the Rule 30(b)(6) deposition of Daniel Cote, the deposition of Maria Woodruff, and the costs and fees associated with pursuing this motion. If the parties are unable to agree on those costs and fees, a motion and opposition may be filed.
II. Plaintiffs’ Request for Sanctions Due to Spoliation of Evidence.
On the same day that the complaint was filed, the plaintiffs appeared before the court seeking an ex parte motion for an order “requiring preservation of documents.” This court granted the motion and an order was entered stating in part:
All defendants must take all necessary steps to assure that their employees, agents, accountants and attorneys refrain from discarding, destroying, erasing, purging or deleting any such documents including, but not limited to, computer memory, computer disks, data compilations, e-mail messages sent and received and all back-up computer files or devices, including but not limited to electronic, optical or magnetic storage media until such time as this court enters a superseding Order regarding the preservation of documents and potential evidence relevant to the above-captioned litigation.
Following the entry of this order, Wyeth sent electronic mail and voice mail messages to its employees advising them of the order and requesting that they *194 save all relevant documents. Defendant’s Tab 3, Exhibits A and B.
Two weeks later, on May 19, 1997, Wyeth filed a motion to vacate the order, arguing that Wyeth was not going to destroy evidence, that Wyeth fully comprehended its obligation to produce evidence in the litigation, and that the overbroad requirements of the court’s order were unduly burdensome to Wyeth. The court vacated the order on May 19, 1997, following careful review of the written submission and oral argument provided by the parties.
On June 3, 1997, the plaintiffs served Wyeth with their first request for production of documents. This request defined the term “document” in an expansive fashion, stating the following:
The term “document” is used in this request in its broadest sense under Mass.R.Civ.P. 34 and includes internal memoranda, correspondence, reports, statements, charts, graphs, lists, drafts, outlines, applications summaries, and compilations, and also includes any record or compilation of information of any kind or description however made, produced, or reproduced, or stored whether by hand or by any electronic, photographic, magnetic, optical, mechanical, computer or other process or technology. Documents can take the form of any medium on which information can be stored, including, without limitation, computer memory, computer disk, film, paper, photographs, tape recordings, video tapes and video disks.
Plaintiffs’ Exhibit 4.
Following the vacation of the ex parte order, the plaintiffs and Wyeth exchanged correspondence wherein the plaintiffs requested that Wyeth enter into a stipulation regarding the documents to be preserved during the pendency of the litigation. Counsel for Wyeth responded in a letter dated June 6, 1997, stating in part:
We do not believe that a stipulation regarding preservation of documents is necessary. Plaintiffs’ requests for production of documents are detailed and expansive, and the defendants recognize their obligation to take reasonable steps to preserve documents relevant to the subject matter of this action. Defendants have taken steps to ensure that their obligations in that regard are met, and they will continue to do so.
Defendant Wyeth-Ayerst Laboratories’ Response to Plaintiffs’ Motion to Compel Further Discovery and for Sanctions (hereinafter “Defendant’s Response”) Tab 3, Exhibit B.
The plaintiffs allege that Wyeth has permitted electronic mail evidence to be destroyed during the pen-dency of this litigation despite a court order, later vacated, mandating that no such documents be destroyed and despite being put on notice that the plaintiffs were seeking production of all such documents. The defendant states that all relevant e-mail has been produced to the plaintiffs on prior occasions. However, it is the position of the plaintiffs that the back-up tapes may contain communications and documents which were deleted from the computer system at some point in time and, thus, are only available on the back-up tapes.
At his deposition, Mr. Daniel Cote, the Associate Director of Business Unit Support for American Home Products, testified that Wyeth did not begin removing back-up tapes from the normal recycling process until September of 1997, four months after the time when this action was initiated, and three months after the document production request.[7] Plaintiffs argue that Wyeth’s action in continuing to recycle its back-up tapes was in violation of (1) the order entered by the court in May 1997, (2) the spirit of the representations made by Wyeth’s counsel at the time when the order was vacated, and (3) the obligations of Wyeth to preserve and produce documents requested in the Rule 34 request of June 3, 1997. According to the plaintiffs, the back-up tapes recycled between May 1997 and September 1997 contained information which could have been pivotal to their case as this was a critical time, occurring just prior to Wyeth’s decision to remove Pondimin from the market.
As a result of this apparent destruction of evidence, plaintiffs have asked that sanctions be imposed upon Wyeth. It is the position of the plaintiffs that the egregiousness of these actions is so severe that the ultimate sanction of default, as provided for in Mass.R.Civ.P. 34, may be warranted. In lieu of that, plaintiffs ask that Wyeth be fined a substantial monetary penalty in the amount of one million dollars and that Wyeth should bear all costs and fees associated with this motion. Plaintiffs further assert that the court should rule that the jury in this case, when it goes to trial, shall be instructed that they may draw an adverse influence about the electronic mail documents which were recycled by Wyeth before they could be produced to the plaintiffs. Finally, it is the argument of the plaintiffs that any evidence about communications between Wyeth and the FDA, or any other entity, regarding Pondimin, Redux, or PPH which occurred during 1994 through 1996, should be excluded at trial.
The defendants maintain that there has been no intentional spoliation of evidence, that they were under no obligation to retain the back-up tapes as all relevant documents were being produced, and that there has been no conduct, intentional, accidental, or otherwise, on the part of the defendants or their counsel which would warrant the imposition of sanctions.
It is undisputed that electronic mail back-up tapes were not preserved from the outset of this litigation. During the period of time when the ex parte order requiring the defendants to preserve all documents *195 relating to this action was in effect, the customary recycling of back-up tapes for the electronic mail system should have been suspended. The court’s order stated explicitly that Wyeth was obligated to preserve any and all “documents including, but not limited to, computer memory, computer disks, data compilations, e-mail messages sent and received and all back-up computer files or devices, including but not limited to electronic, optical or magnetic storage media.” The recycling, and resultant destruction, of those back-up tapes was in clear violation of the court’s order.
On May 19, 1997, upon vacation of the court order to preserve documents, Wyeth was no longer under a court imposed obligation to preserve the back-up tapes. However, the removal of the restrictive court order was closely followed by the service of plaintiffs’ first request for production of documents. As is set out above, the request for production of documents defined the term “document” in a broad fashion, seeking “any record or compilation of information of any kind or description, however made ... or stored.” Also requested were any documents in the form of computer memory or computer disk. The language of the document request makes it clear that the plaintiffs sought the production of items such as the system back-up tapes and, after receiving this request, the defendants had an obligation to preserve any such documents or materials.
“A litigant has a duty to preserve evidence.” Townsend v. American Insulated Panel Co., Inc., 174 F.R.D. 1, 3 (D.Mass. 1997); Corales v. Sea-Land Service, Inc., 172 F.R.D. 10 (D.P.R. 1997). Spoliation of evidence occurs when there has been negligent or intentional destruction of physical evidence which results in some unfair prejudice to the opposing party. Kippenham v. Chaulk Services, Inc., 428 Mass. 124, 127 (1998). Potential sanctions for the destruction of evidence may include dismissal of the case, the exclusion of evidence, or a jury instruction on the “spoliation inference.” Townsend, 174 F.R.D. at 2.
At the hearing on this motion, plaintiffs’ counsel requested that the court impose a monetary sanction in the amount of one million dollars against the defendant for the defendant’s destruction of the back-up tapes which would have included information from Wyeth’s computer systems from sometime in February of 1997 until September of 1997. While the court agrees that the failure to preserve documents requested by a party is inexcusable conduct on the part of Wyeth, there is no appropriate vehicle before the court upon which to impose monetary sanctions, in effect, a fine, upon the defendant.
Mass.R.Civ.P. 37(b)(2)(D) provides for court ordered sanctions in conjunction with a finding of contempt based upon the violation of a discovery order entered by the court. The court notes that the case cited to the court by the plaintiffs, In re Prudential Ins. Co. Sales Practices Litigation, 169 F.R.D. 598, 615 (D.N.J. 1997), involves just that, an explicit violation by the defendant of a court ordered mandate to preserve documents. In the absence of the violation of an order of the court,[8] the imposition of a punitive monetary sanction is not an appropriate response on the part of the court. Accordingly, the court finds that monetary sanctions are not appropriate at this time.
Plaintiffs also ask that the court order that the jury, at the time of trial, be instructed that an adverse inference may be drawn from the fact that documents were destroyed by Wyeth. This concept has been referred to in the case law as the “spoliation inference.” See Mayes v. Black & Decker, 931 F.Sup. 80, 83 (D.N.H. 1996). The use of the spoliation inference permits the jury to infer that the party who destroyed potentially relevant evidence did so “out of a realization that the [evidence was] unfavorable.” Blinzler v. Marriott International, Inc., 81 F.3d 1148, 1158 (1st Cir. 1996). This inference may be drawn once a foundation has been established to demonstrate that the party who destroyed the evidence had notice of the claim, and of the potential relevance of the evidence at issue. Id.; Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir. 1982). Under the circumstances, the requested sanction is appropriate, and the parties may submit a proposed jury instruction prior to trial.
The second evidentiary ruling sought by the plaintiffs, in the form of a sanction for the destruction of evidence discussed in this motion, is that any and all evidence of communications between Wyeth employees and personnel and the FDA, as well as any other entity, regarding Pondimin, Redux, and PPH issues during the period 1994-1996, should be excluded from the trial. There is a host of case law in this jurisdiction which supports the proposition that evidence which has been lost, altered, or destroyed through the intentional or neglectful conduct of a litigant may be excluded from use at trial by that party. See Kippenham, 428 Mass. at 126; Nally v. Volkswagen of America, Inc., 405 Mass. 191, 197 (1989).
In this instance, it is difficult to identify what, precisely, is the evidence which should be excluded, were such a sanction to be imposed. As the plaintiffs recognize, it is not known what evidence has been destroyed. The plaintiffs presume that there were communications, subsequently deleted from the system but retained on the daily back-up tapes, which discussed Pondimin and the labeling changes which were in process at Wyeth during this period of time. However, there is no evidence of that, and it may be assumed that there never will be any such evidence in light of the fact that the back-up tapes have been destroyed. This is unlike the typical products liability case where, for example, the following situation may arise: a truck was involved in an accident, the plaintiffs contend the accident was caused by the trailer *196 attached to the truck and manufactured by Corporation X, Corporation X asserts that the accident was caused by some fault with the truck, Corporation X goes to inspect the truck after it has been inspected by the plaintiffs, and finds that it has been shipped to a junk yard by the plaintiffs and destroyed. In such an instance, the appropriate ruling by the court is that the plaintiffs cannot introduce evidence as to the condition of the truck prior to the accident. See generally Corales, 172 F.R.D. 10.
Such a narrowly tailored sanction is not presently available to the court. Certainly Wyeth may not introduce evidence of communications between Wyeth personnel about the FDA which have not been made available to the plaintiffs. However, plaintiffs seek a ruling which would restrict Wyeth from introducing evidence of communications between Wyeth and the FDA because plaintiffs have not had access to internal memoranda which may have discussed these third-party communications. That is, the plaintiffs hoped that the back-up tapes, which were destroyed, might have contained intra-corporate correspondence commenting upon communications between Wyeth and the FDA.
There is a flaw in the plaintiffs’ logic: communications which took place between Wyeth and the FDA are available to the plaintiffs, if not through Wyeth, then through the FDA. Given that plaintiffs can access such communications in one of two ways, there has been, or will be, ample opportunity for the plaintiffs to explore any discussions of such correspondence at depositions. Moreover, the factual predicate to the relief which they seek is too speculative in nature. If the tapes had not been recycled, the plaintiffs’ hope would have been to locate documents which were not available to them through other avenues of discovery. There is no indication that this hope would have been realized and the court will not issue sanctions based upon hope and speculation.
The court will not be adverse to revisiting this issue at the time of trial and will be open to any arguments which plaintiffs wish to offer with regard to prejudice that has resulted from Wyeth’s spoliation of evidence.
Finally, the plaintiffs have requested that Wyeth bear the burden of all fees and costs associated with the electronic mail discovery issue. The court concludes that such an imposition of fees and costs is appropriate. If the parties are unable to agree on these costs and fees, a motion and opposition may be filed.
ORDER
For the foregoing reasons, the court ORDERS that the Plaintiffs’ Motion to Compel the Production of Documents be ALLOWED to the extent that all documents produced according to the agreement reached between the parties in MDL 1203 will be made available to these plaintiffs at the earliest possible time. The issue of further discovery with regard to the back-up tapes will be revisited once this first stage has been completed, The court further ORDERS Wyeth to pay costs and fees associated with the plaintiffs’ efforts to pursue this line of discovery, including the depositions of Daniel Cote and Maria Woodruff. All other requests for sanctions which accompanied the Plaintiffs’ Motion to compel the Production of Documents are DENIED at this time but may be open for reconsideration in accordance with this Memorandum of Decision. As to the Plaintiffs’ Request for Sanctions Due to Spoliation of Evidence, the Court ORDERS that the jury will be instructed on the “spoliation inference” at the time of trial and that Wyeth reimburse the plaintiffs for fees and costs incurred as a result of this issue. Again, the other issues raised by the plaintiffs in their motion, and which are discussed in this memorandum, may be raised for reconsideration at the appropriate time.

 “The term ‘document’ is used in this request in its broadest sense under Mass.R.Civ.P. 34 and includes internal memoranda, correspondence, reports, statements, charts, graphs, lists, drafts, outlines, applications summaries, and compilations, and also includes any record or compilation of information of any kind or description however made, produced, or reproduced, or stored whether by hand or by any electronic, photographic, magnetic, optical, mechanical, computer or other process or technology. Documents can take the form of any medium on which information can be stored, including, without limitation, computer memory, computer disk, film, paper, photographs, tape recordings, video tapes and video disks.” Plaintiffs’ Exhibit 4.

 In this letter plaintiffs also pointed out that, according to the formal Records Management Program adopted by Wyeth, certain records, including electronic media retention, should have been saved and transported to an appropriate off-site storage location. A number of the documents sought by the plaintiffs, according to the plaintiffs, fell under the rubric of materials which have “extended retention periods.” Plaintiffs’ Exhibit 16.

 A number of the individuals identified by the plaintiffs as “key players” were employed in the Medical Affairs Department at Wyeth.

 The court does not perceive this motion as an attempt by the plaintiffs to engage in a “fishing expedition.” The plaintiffs have tailored their document request with regard to electronic mail in such a manner as to look for specific responsive communications. Certainly the plaintiffs are entitled to discovery, to some extent, of the information contained on the back-up tapes regardless of the number of documents previously produced by the defendants or the cost of such restoration and production.

 It is customary practice for Wyeth to maintain three months of back-up tapes at a time. Therefore, a tape made on January 1, 1999 would then have been “recycled,” that is taped over, on April 1, 1999.

 The violation of this court’s short-lived ex parte order to preserve documents, while serious, does not warrant the imposition of a monetary sanction.